## Case No. 14,019.

### THURSTON v. UNION PAC. R. CO.

[4 Dill. 321; 22 Int. Rev. Rec. 251; 8 Chi. Leg. News, 323; 13 Alb. Law J. 393.] [1]

Circuit Court, D. Nebraska. 1877.

CARRIERS — EXPULSION OF GAMBLERS FROM RAILWAY TRAINS.

Gamblers and monte-men, whose purpose in traveling upon a train is to ply their vocation, may be excluded.

[Cited in brief in Chicago & A. R. Co. v. Pillsbury, 123 Ill. 20, 14 N. E. 22. Cited in Lemont v. Washington & G. R. Co., 1 Mackey, 180.]

It was alleged, and not denied, that plaintiff had purchased from the road, for fifty cents, a ticket for crossing the river on the transfer train, and that when the train was about starting he attempted to board it, but was prevented. He also purchased, for ninety cents, from the company, a ticket good on another road, but was forcibly ejected from the train, and obliged to remain in Omaha several days before he could safely get away, for which he asked $5,000 damages. The defendant admitted that the necessary force (but no more) was used to prevent his entering the train. It was claimed that he had been for years a notorious gambler—a "monte-man," so-called—and was then engaged in traveling on the defendant's road for the purpose of plying that calling, and was about to enter the train for that purpose. This the plaintiff denied. The question was, whether the defendant has the right to exclude gamblers from its trains? Upon this point the charge of the court is given below.

John I. Redick, for plaintiff.
Mr. Poppleton and Mr. Wakely, for defendant.

DUNDY, District Judge. The railway company is bound, as a common carrier, when not over-crowded, to take all proper persons who may apply for transportation over its line, on their complying with all reasonable rules of the company. But it is not bound to carry all persons at all times, or it might be utterly unable to protect itself from ruin. It would not be obliged to carry one whose ostensible business might be to injure the line; one fleeing from justice; one going upon the train to assault a passenger, commit larceny or robbery, or for interfering with the proper regulations of the company, or for gambling in any form, or committing any crime; nor is it bound to carry persons in-

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 13 Alb. Law J. 393, contains only a partial report.]

fected with contagious diseases, to the danger of other passengers. The person must be upon lawful and legitimate business. Hence defendant is not bound to carry persons who travel for the purpose of gambling. As gambling is a crime under the state laws, it is not even necessary for the company to have a rule against it. It is not bound to furnish facilities for carrying out an unlawful purpose. Necessary force may be used to prevent gamblers from entering trains, and if found on them engaged in gambling, and refusing to desist, they may be forcibly expelled.

Whether the plaintiff was going upon the train for gambling purposes, or whether, from his previous course, the defendant might reasonably infer that such was his purpose, is a question of fact for the jury. If they find such to have been the case, they cannot give judgment for any more than the actual damage sustained.

After the ticket is purchased and paid for, the railroad company can only avoid compliance with its part of the contract, by the existence of some legal cause or condition which will excuse it. The company should, in the first case, refuse to sell tickets to persons whom it desires and has the right to exclude from the cars, and should exclude them if they attempt to enter the car without tickets. If the ticket has been inadvertently sold to such person and the company desires to rescind the contract for transportation, it should tender the return of the money paid for the ticket. If it does not do this, plaintiff may, under any circumstances, recover the amount of his actual damage, viz.: what he paid for the ticket, and, perhaps, necessary expenses of his detention.

In this case the jury rendered a verdict for actual damages ($1.74) and costs, the company not having tendered the money. Judgment on verdict.