Mr. Justice Mac Arthur,
after briefly stating the case, delivered the opinion of the court:
At the close of the testimony the learned justice presiding at the trial, instructed the jury, at the request of counsel for the plaintiff, that “ if the jury find from the evidence that Lemont was drunk, that fact would not justify the conductor in expelling him from the car, unless they also find that he was disorderly and refused to be controlled by the conductor, or was disgusting and offensive to the other passengers.”
An exception is taken to this instruction; and it is contended that the right to expel the plaintiff from the car does not depend altogether upon his actual misconduct, but that he may also be expelled if his condition and conduct were such as to afford the conductor a reasonable ground for believing that if he were permitted to remain in the car he would be guilty of some misconduct or indecency.
In support of the instructions we are referred to the cas of Pearson vs. Duane, 4 Wall., 605, where the Supreme Court *185 say, that although a railroad or steamboat company can properly refuse to transport a drunken or insane man, or one whose character is bad, they cannot expel' him after having admitted him as a passenger and received his fare, unless he misbehaves during the journey. This is undoubtedly intended as a statement of a general rule, and was quite appropriate to the facts in that case, as there was no question at all about the conduct of the passenger being entirely unobjectionable, and that it afforded no reasonable ground to believe that he would misbehave in any respect. There are, however, adjudicated cases in which this distinction has been expressly considered and enforced; and they decide that where the circumstances are of such a striking character as to give rise to a reasonable and honest apprehension of disorder and annoyances from the conduct and condition of a passenger, the conductor may exercise his authority and exclude the offender in order to maintain the peace and safety of the vehicles intact. It is evident that the police of horse railway cars, in order to be efficient, must be preventive as well as retroactive, and this can only be done by .allowing the conductor to exercise a reasonable discretion in order to prevent acts of impropriety and violence, when they are likely to occur. A homicidal lunatic, or a notorious thief, may be ejected, although they have neither slain or robbed a passenger, if there is reasonable fear of danger. Each ease must, of course, depend upon its own circumstances; as was said in Vinton vs. Middlesex R. R., 11 Allen, 304, it is obvious that any such restriction on the operation of that rulé of law would greatly diminish its practical value.
The safeguard against an unjust or unauthorized use of the power is to be found in the consideration that it can never be properly exercised, except in cases where it can be satisfactorily proved that the condition or conduct of a person wras such as to render it reasonably certain that he would occasion discomfort or annoyance'to other passengers if admitted into a public vehicle or allowed to remain. This case is referred to more recently by the same court with approbation in Murphy vs. U. P. R. R. Co., 118 Mass., 228. *186 In the case of Thurston vs. Pacific R. Co., 4 Dill., 321, the question was, whether the company had the right to exclude gamblers from its trains, and the court observed, “ whether the plaintiff was going upon the train for gambling purposes or whether from his previous course, the defendant might reasonably infer that such was his purpose, is a question of fact for the jury.” Jencks vs. Coleman, 2 Sumner, 221, was an action against a steamboat company for excluding a person who came on board the defendants’ steamer for the purpose of soliciting passengers for a rival line. After stating the case and explaining the general obligations of carrier and passenger, Mr. Justice Story, who presided at the trial, charged the jury that “ the only question in the present case is, whether the conduct of the proprietors (defendants) of the steamboat has been reasonable and bona fide.” Thus we see that reasonable and probable cause will authorize the carrier or his agents in the business to exercise the right of exclusion in a proper case where a breach of good order might reasonably be apprehended. We think, therefore, the defendant was entitled to have all the circumstances of the case considered by the jury, and if his conduct appeared reasonable and his expulsion of the plaintiff a just and proper expedient for the purpose of preventing a violation of decency and good order, the verdict ought to have been for the defendant. Of course, as already remarked, for an abuse of this discretion or for any oppression in its exercise the company would be responsible. The doctrine, being thus guarded, seems to rest on principle as well as authority. The instruction under discussion deprived the defendant of the consideration whether there was reasonable cause for the conductor, and hence was erroneous and the exception well taken.
The jury were told, at the request of the plaintiff’s counsel, that the conductor had no legal right to expel the plaintiff unless they find that he wilfully or voluntarily disobeyed the conductor’s request to leave the car> even though the conductor may have supposed him to be drunk. Here the broad doctrine is laid down that *187 offensive conduct on the part of a passenger is not a proper cause of expulsion unless such conduct, is wilful or voluntary, and that the other passengers may be subjected to any degree of annoyance so long as the offender is not wilful in his misconduct. We are not aware of any principle by whichjhis proposition can be maintained. The absence of an evil intention is a good defense to an indictment, but surely that principle cannot be alleged to exonerate a person honestly supposed to be drunk, and who repeatedly disobeys the request of the conductor to behave himself. If it be said that the plaintiff' was sick, good faith at least required that he should inform the conductor of the fact. ' It is not only reasonable but necessary that sick and decrepit people should be transported on street railways, as they are on steam railways, but their right in this respect is not unlimited. The rule to be adopted on steam trains where the journeys are long and continuous, would not be the proper rule to adopt when the same is to be applied to horse railways. Murphy vs. U. P. R. R., 118 Mass., 228. Sleeping accommodations and other modes of rest are expected and necessarily allowed in the former, and the passengers frequently occupy more than their own seat to relieve the unrelaxed muscles on a long ride. But a similar act could not be practiced on a street car without very great inconvenience to the company and the other passengers. A sick person has no prerogative to misbehave and must conform to the reasonable regulations of the company, and while showing him good treatment they are not required to provide, without a special contract, any extra means for his accommodation. It is at least reasonable that the conductor should know the facts which render his condition peculiar in order to extend unusual indulgence, and also that he may make proper and reasonable allowance for what may seem unusual or obnoxious in the conduct of the passenger. These considerations show how much the jury were misled from the true question for their determination. We think this exception is also well taken.
We are further of opinion that the court erred in *188 regard to the fifth and sixth instructions for the defendant. The court was requested to charge that if the plaintiff persistently and repeatedly lay down upon the seat of the car notwithstanding that he had been repeatedly forbidden so to do by the defendant’s conductor and contrary to the rules’ of the defendant, the conductor was justified in ejecting plaintiff from the car. But the court refused so to insti’uct the jury except with the modification following: “ Unless the jury find that the acts of the plaintiff were the consequence of debility resulting from bodily infirmity or sickness not resulting from intoxication.” Thus the jury were told that if the acts of the plaintiff were caused by infirmity or sickness they constituted no justification for expelling him from the car. Now, there is no pretence in the bill of exceptions that the defendant’s conductor on the car from which the plaintiff was expelled, had any knowledge that the plaintiff had any disability, bodily infirmity or sickness not resulting from intoxication. It was proved that the plaintiff slept in the car and could not or would not keep awake, and upon being roused up by the conductor and cautioned, immediately relapsed into sleep, and the conductor supposed him to be drunk. The plaintiff made no explanation and made no complaint of sickness, yet the jury were told that if the acts enumerated in the instruction were caused by sickness they afforded no justification for ejecting him. This is to charge the proprietors of a street railway car with extra care and diligence in case of a sick passenger when the agent of the company had no knowledge that the passenger was sick, and when he supposed him to be only drunk, and attributed his misconduct to that cause alone. The plaintiff’s paralysis was accompanied with a loss of speech. He had, however, the sign language so common on street railways, besides his habit of communicating by writing. But he resorted to neither of these means of explaining his conduct. To say that the plaintiff was entitled to indulgence as an invalid which was not extended to other passengers, and that he was not bound to explain his condition when he was repeatedly requested by the conductor not to lay down upon *189 the seats, is so evidently calculated to mislead the jury, that we cannot but think it produced serious injustice to the case.
The qualification to the sixth instruction implies that a passenger who vomits in a street railway jpaá from intoxication, may be ejected, but not Otherwise. This is stating the rule too broadly. Much, of coyirse, must depend upon the cause and also upon the extent and nature of the attack. In the infinite variety of circumstances a general rule for all cases can hardly be laid down with safety, and we must on this account submit the question whether the case was one to justify the removal of a passenger, under proper instructions from the justice' presiding at the trial. To charge the jury that vomiting from intoxication was the only form of that evil which would authorize the conductor to expel a passenger, is to withdraw from the minds of the jury all other forms of the evil which might excuse the conduct of the conductor in the proper management of the car. In this view we can neither wholly approve of the instruction nor of its qualification by the court, and submit this expression to relieve the new trial from embarrassment on an important point.
We are of opinion that the qualification of the seventh of defendant’s instructions withdrew the question of contributory negligence from the consideration of the jury, and is clearly improper.
We have not found it necessary to examine the case made or to pass upon the motion based upon that record. For the reasons already mentioned a new trial upon the exceptions must be allowed.