EDGERLY, *Adm'x*, *v.* UNION STREET RAILROAD COMPANY.

It is both the right and the duty of a common carrier to remove from his vehicle a passenger whose conduct or condition is such as to endanger the safety of or cause discomfort or annoyance to, other passengers; and if the removal is made in a proper manner and at a suitable time and place, it cannot be regarded as the proximate cause of a subsequent injury to him.

An electric railroad company is liable for the death of a drunken man who is run over and killed by its car while he is lying on its track, if by reason of his condition he was incapable of extricating himself from his danger, and if the employés of the company could have prevented the injury by the use of ordinary care.

A general exception to instructions given to the jury is unavailing.

CASE, for injuries to Charles J. Edgerly, the plaintiff's intestate and late husband, resulting in his instant death November 22, 1890, from the negligent management of one of the defendants' cars propelled by electricity. The action is brought under Laws of 1887, *c.* 71. The first count in the declaration alleges that the deceased was run over and killed in consequence of the negligent management of one of the defendants' cars by their servants. The second count is similar to the first, except that it alleges that the deceased was lawfully in a public highway. The third count is

similar to the second, except that it alleges that the deceased, a passenger in one of the defendants' cars, to be carried from Great Falls to Dover, having paid the usual fare, was wrongfully ejected from the car by the defendants' servants, and on the same day, through the negligence of the defendants' servants, was run over by one of the defendants' cars and killed.

The plaintiff introduced evidence tending to show that Edgerly was lying intoxicated upon the defendants' track November 22, 1890, at about six o'clock in the afternoon, and was run over and killed by an electric car of the defendants; that a passenger saw him on the track one and a half car-lengths ahead, though it was not light enough to distinguish the object as being a man; and that the car was running at a pretty good speed, on a down grade. Subject to the defendants' exception, a witness who testified that he had worked two years as a motorman, and that he had examined the place of the accident and had made observations to see how far a man lying on the track could be seen in the day-time by a motorman in his place on the car, was allowed to state his opinion that a man could be seen two hundred feet in the day-time, and thirty feet in the night-time by the aid of a head-light; and that an electric car coming down that place at a speed of six miles an hour, with the current off, could be stopped by brakes in good order inside of ten feet, and if going seven or eight miles an hour, in twelve to fifteen feet. The jury took a view of the place of the accident. Under the third count there was much evidence on both sides as to Edgerly's condition and conduct previous to his ejectment from another car of the defendants, shortly before he was run over and killed, as before mentioned. This evidence is sufficiently stated in the opinion of the court. When the plaintiff rested, the defendants moved for a nonsuit on the ground that negligence had not been shown in the defendants, or due care on the part of the deceased. The motion was denied, and the defendants excepted.

The defendants requested the following instructions, among others, and excepted to the refusal to give them:

"1. The fact that the plaintiff's intestate was ejected from a car of the defendants on the afternoon of the accident has nothing to do with the present suit.

"2. If the plaintiff was expelled from the car by the conductor in the public highway, at the place where the evidence shows he was, by reason of his intoxication and misconduct, in a reasonably careful manner, the company would have performed all its duties to the plaintiff as far as that transaction went, and what occurred after would be just as though the plaintiff had not ridden upon the car that day.

"3. Had the conductor removed him from the car without any reason, it would have no bearing on this case; and under the present circumstances you will not consider whether the conductor

was or was not justified in removing him, except to the extent that it may aid you in the determination of the fact as to whether or not Edgerly was in a condition to be in the exercise of due care.

" 4. If you should find that Edgerly was intoxicated and abusive, it would be the duty of the conductor to remove him from the car ; and if he did not, a passenger who had paid his fare could sustain an action against the company for the conductor's neglect so to do."

The questions whether the conduct of the deceased was such as justified his expulsion from the car, and whether men of average prudence would have reasonably anticipated the result that followed, were submitted to the jury under instructions to which no specific exceptions were taken.

Upon the first and second counts the jury were instructed, among other things :

" If the deceased was upon or close to the track of the road by his own negligence, still it was the duty of the employés of the road to use at least ordinary care to discover the presence of an object upon the track, and the character of the object, whether a human being or an inanimate object, and if a human being, to make use of all available means, short of imperilling the lives of the passengers, to prevent injury to him. The employés had the right to assume that no person in his right mind and in the use of his limbs would voluntarily place himself in a position of danger from the passage of cars. Yet it was their duty, as before remarked, to use at least ordinary care to discover whether there might not be obstructions upon the track—a duty due to the passengers, to travellers upon the highway, or to any other person. This point in the case is to be decided upon the evidence, and in the light in which the motorman had to govern his actions. It may be apparent to us that he might have done differently. But it is for you to say whether he used all the watchfulness he ought to have used to discover an object on the track, and to avoid injury to it after it was discovered. He had a duty to perform to his other passengers. If he did not discover the object on the track, and might by the exercise of ordinary care have discovered it sooner than he did, it was negligence in him, and his negligence was the negligence of the company. He was bound to use ordinary care only. If he used all the care a person of average care would have used, he was not negligent. If he did not, his negligence would be that of the company, because he was the company's servant. Whether he did exercise due care to discover an object on the track is for you to say after weighing and considering all the evidence upon that part of the case ; and it is for you to say whether, after he discovered the object, he used all the means in his power to prevent injury to it.

" Ordinarily, a person who is injured by the negligence of another cannot recover if he was himself guilty of negligence

which contributed to the accident; and that would be true in this case if Edgerly at the time of the accident was capable of extricating himself from the danger of being run over. Whether he was or was not is for you to determine from the evidence. You will decide whether, at the time the car came in contact with his body, he was capable of extricating himself from the danger; because if he was and did not, he could not recover in this case if he were alive, and his widow cannot, he being dead.

"But although he negligently placed himself in a place of peril, yet if at the time of the accident he was incapable of extricating himself from his danger by reason of his intoxicated condition, and the employés of the road could by the use of ordinary care have prevented the accident, the company is liable. In deciding this question you should also consider the company's duty to its passengers: their safety was to be considered as well as the safety of Edgerly lying upon the track. You will also consider the time of day when the accident happened,—how much the view was shut out by the darkness of the night; how far an object at that hour, between five and six o'clock, could be seen; also, how soon or within what distance after the motorman discovered the body on the track he could stop his car, and how much he would be hindered by the excitement incident to the occasion. Look at the matter as the motorman was compelled to look at it in the circumstances in which he was placed, as disclosed by the evidence."

The defendants excepted generally to the instructions. Verdict for the plaintiff.

*John Kivel, George S. Frost,* and *John S. H. Frink,* for the plaintiff.

*James A. Edgerly* and *William F. Nason,* for the defendants.

BLODGETT, J. To maintain the third count in her declaration, it was incumbent upon the plaintiff to show that her intestate was not only wrongfully ejected from the defendants' car, but that the subsequent injury to him was the natural and probable consequence of the ejection,—such a consequence as might and ought to have been foreseen by the defendants as likely to result from their act. In both of these respects the plaintiff failed to make it appear that there existed any duty on the part of the defendants towards the deceased which was unfulfilled. His expulsion from the car was justifiable. All the evidence shows that he was abusive, profane, creating a disturbance, and annoying the other passengers; that it was only upon his repeated refusal to desist that he was removed; that this was done in a reasonable manner as to time and place and as to the force used, which was only enough to accomplish the object; that his condition as to intoxi-

cation was not such as to render it likely that the ejection would be unsafe and dangerous in its consequences; and that he was exposed to as little peril as was reasonably possible under the circumstances.

There is no warrant in law, and certainly there can be none in principle, which compelled the defendants as a common carrier of passengers to allow the deceased to remain within their public vehicle any longer than he conducted himself in a decent and proper manner. On the contrary, it is the doctrine of all the adjudications and authorities that a carrier of passengers has the power of refusing to receive as a passenger, or to expel, any one who is drunk, disorderly, or riotous, or who so demeans himself as to endanger the safety or interfere with the comfort and convenience of the passengers, and may exert all necessary power and means, at the proper time and place, to eject from the car or other vehicle any one so imperilling the safety of, or annoying, others.

But it is not only the right, it is the duty, of a carrier to exclude or expel from his vehicle any person whose conduct or condition is such as to endanger the safety of, or to create inconvenience and disturbance or to cause discomfort and annoyance to, other passengers. And if this duty is neglected without good cause, and a passenger receives injury which might have been reasonably anticipated or naturally expected from one who is improperly received or permitted to continue as a passenger, the carrier is ,responsible. *Putnam* v. *Railroad,* 55 N. Y. 108; *Flint* v. *Transportation Co.,* 34 Conn. 554; *Marquette* v. *Railroad,* 33 Iowa 562; *Pittsburgh, etc., Railway Co.* v. *Hinds,* 53 Pa. St. 512.

Nor is a carrier bound to wait until some act of violence, profaneness, or other misconduct is actually committed before exercising his authority to expel the offender. It is sufficient if the offender, by means of intoxication or otherwise, is in such a condition as to render it reasonably certain that by act or speech he will become offensive or annoying to other passengers, although he has not committed any act of offence or annoyance. *Vinton* v. *Railroad,* 11 Allen 304; *Murphy* v. *Railway,* 118 Mass. 228, 230; *Lemont* v. *Railroad,* 1 Mackey 180—47 Am. Rep. 238; *Brown* v. *Railroad,* 7 Fed. Reporter 51; *Jenks* v. *Coleman,* 2 Sumn. 221; *Thurston* v. *Railroad,* 4 Dill. 321.

The plaintiff's case, therefore, stands no differently by reason of the expulsion of her intestate from the car than it would if he had voluntarily left it, or had not entered it at all.

" But if the propriety of the expulsion were doubtful, either because deceased's conduct did not justify it, or because his condition rendered it unsafe and dangerous in its consequences, still we must find that his death was the natural and proximate cause of the expulsion before defendants can be made liable." *Railway Co.* v. *Valleley,* 32 Ohio St. 345—30 Am. Rep. 601. This cannot properly be found upon the evidence. However it may have been

subsequently, at the time of his expulsion the deceased was not so drunk as to be bereft of intelligence; his physical faculties were not so impaired that he was unable to walk. There was no reason to suppose he was not able to care for himself. He was not put off "at night in the woods, far from houses, upon the brink of a precipice, or upon a high railroad bridge." The time was shortly after sunset, and the place was near dwellings, and upon a public highway which is not claimed to have been otherwise than suitable for the travel upon it. There was no evidence tending to show that the place was a dangerous one, or that the deceased was put in circumstances of danger greater than those that attend every person in his condition whose business or pleasure takes him over that part of the highway. In short, there was no legitimate connection between the expulsion and the deceased's death except as he himself connected it by reason of his intoxication; and for this, as between him and the defendants, he alone was responsible.

The denial of the motion for a nonsuit was proper. Whether negligence had been shown by the defendants in the running of their car upon the deceased, and whether there had been due care on his part to avoid it, were questions of fact upon which there was evidence competent to be submitted to the jury, and upon which they might find for the plaintiff. When this is so, a nonsuit will not be granted. *Page* v. *Parker*, 43 N. H. 363; *National Bank of Newbury* v. *Bank*, 62 N. H. 703. The instructions given upon these questions were correct (*Nashua Iron and Steel Co.* v. *Railroad*, 62 N. H. 159, 164, 166), but if it were otherwise, the defendants' general exception would be unavailing. *Reynolds* v. *Railroad*, 43 N. H. 580, 588; *Paine* v. *Railway*, 58 N. H. 611; *Haines* v. *Republic Ins. Co.*, 59 N. H. 199.

For failure to give the instructions requested by the defendants as to the third count, the exceptions are sustained.

*Verdict set aside.*

SMITH, J., did not sit: the others concurred.