Hillsborough, }
March 7, 1911. }

### CAVANAUGH, *Adm'r*, *v.* BOSTON & MAINE RAILROAD.

An argument of counsel embodying an erroneous conclusion of law which the jury are instructed to disregard does not furnish cause for setting aside a verdict.

Where the evidence in an action for personal injuries received in a collision shows that the plaintiff's presence in a place of danger and his failure to avoid injury were due to his negligent inattention, and that the defendant, after discovering the plaintiff's peril and recognizing his ignorance of the situation, might have prevented an accident by reasonable prudence, the defendant's failure to exercise due care is to be regarded as the sole proximate cause of the injury, and the plaintiff is entitled to recover.

CASE, for negligence. Trial by jury and verdict for the plaintiff. Transferred from the January term, 1910, of the superior court by *Pike,* J.

Edith Bolis, the plaintiff's intestate, was killed by collision with the defendants' train upon a highway grade crossing. At the time of her death she was about thirteen years old. She was driving alone in an open wagon, immediately following a carriage in which were three adults. She was driving slowly, would have seen the train if she had looked, and could have stopped within six feet of the crossing. The engineer testified that he saw the teams approaching the crossing when the train was about seventy-two rods and the forward carriage about eight rods distant therefrom; that the teams

did not slacken their speed as teams usually do; that he sounded the whistle when he was forty or fifty rods from the crossing and continued to sound it until the team was struck; that when he failed to attract the attention of the travelers, he applied the brakes for an emergency stop, this being done when the train was about forty rods from the crossing. The teams drove upon the crossing, the first one clearing the locomotive. There was evidence tending to show that the whistle was not sounded nor the brakes applied until just before the crossing was reached, and that the train could have been brought to a full stop within 500 feet.

The defendants' motion for a nonsuit, on the ground that there was no evidence of care on the part of the plaintiff's intestate at the time of the accident, was denied, subject to exception. The only question submitted to the jury was the liability of the defendants under the principles of the "last clear chance" doctrine.

In argument, counsel for the plaintiff said: "Gentlemen, take this case. Do what is right; that is all. Look it over; and if you want to condemn the little thirteen-year-old girl because she didn't stop, if you want to condemn this little girl and protect this railroad, and say they were in the exercise of ordinary care, do so." Objection was made to the use of the word "protect," whereupon counsel withdrew the expression and asked the jury to disregard it. They were also instructed by the court to pay no attention to it. The defendants claimed an exception, which was allowed.

Doyle & Lucier (Mr Lucier orally), for the plaintiff.

Hamblett & Spring (Mr. Spring orally), for the defendants.

PARSONS, C. J.  The argument contained no statement of fact not in evidence. If the use of the word "protect" was an appeal to the jury to decide the case upon grounds which they could not properly take into consideration, the error was one of law which was cured by the instruction of the court. Seeton v. Dunbarton, 73 N. H. 134, 137; Leavitt v. Telephone Co., 72 N. H. 290, 292.

The remaining exception is to the denial of the motion for a nonsuit, which was asked upon the ground of the absence of any evidence of care on the part of the person injured. As the case is drawn, it may be inferred that the existence of evidence of the defendants' fault was conceded; but if such concession was not intended, this branch of the question requires little consideration.

From the testimony of the engineer, it could be found that he knew the teams were approaching the crossing in ignorance of the coming train, at a time when he could have given warning or applied the brakes in season to prevent a collision; and from all the evidence it might be found he did not do either until too late. What the facts were, and whether the engineer's failure to act was negligence causing the injury, were questions for the jury. The motion was properly denied if the jury could be permitted to find from the evidence of the conduct of the plaintiff's intestate, a girl of thirteen years, that she exercised such care as could reasonably be required of such a person under all the circumstances of the case; or if she did not, that the defendants' negligence, as distinguished from hers, was the sole proximate cause of the injury. The first question was not submitted to the jury, nor does the case disclose the form in which the second was presented to them.

Upon the evidence in the case, it was for the jury to say whether the exercise by the trainmen of such care as the circumstances required, after the engineer discovered the deceased, would have prevented the injury. If it would, the failure to exercise such care was the sole proximate cause of the injury, although the danger was created by the deceased's negligent inattention to the situation. This has been held in several cases upon facts identical with those presented here (*State* v. *Railroad*, 52 N. H. 528; *Parkinson* v. *Railway*, 71 N. H. 28; *Little* v. *Railroad*, 72 N. H. 61; *S. C.*, 72 N. H. 502; *Yeaton* v. *Railroad*, 73 N. H. 285; *Altman* v. *Railway*, 75 N. H. 573), and was conceded in *Stearns* v. *Railroad*, 75 N. H. 40, 46.

The law does not justify an avoidable injury to the person of one who carelessly exposes himself to danger. *Nashua etc. Co.* v. *Railroad*, 62 N. H. 159. While the rule is clear, its application to the various situations found in this class of cases may involve some "nice distinctions." *Gibson* v. *Railroad*, 75 N. H. 342. But the difficulties arise from the facts—not from the law. "While all [cases] are governed by the fundamental principle, that he, only, who by ordinary care can and does not prevent an injury is responsible in damages, it is impossible to formulate a rule in language universally applicable. A statement of the law correct in its application to one set of facts may be inaccurate when applied to another." *Nashua etc. Co.* v. *Railroad,* 62 N. H. 159, 164. The danger may be created by the inattention of both parties, neither discovering the other until neither can avoid the resulting injury. In such cases

the injury and the danger result from the same cause, the negligent inattention of both parties, and there can be no recovery.  *Gibson* v. *Railroad*, 75 N. H. 342;  *Batchelder* v. *Railroad*, 72 N. H. 528.

If the trainmen see the traveler approaching the crossing, there still may be no evidence upon which it can be found that they ought to have apprehended the traveler would go upon the crossing in advance of the train.  *Gahagan* v. *Railroad*, 70 N. H. 441;  *Waldron* v. *Railroad*, 71 N. H. 362.  In these cases the plaintiffs fail, not because of their negligence, but because of the absence of negligence in the defendants.  The traveler may be seen by the trainmen in the act of crossing, at a time when they can avoid the injury and the traveler cannot.  *Stearns* v. *Railroad*, 75 N. H. 40;  *Yeaton* v. *Railroad*, 73 N. H. 285.  The train may be discovered by the traveler at a time when he could avoid injury by care.  In such case there can be no recovery, even if the railroad employees could have avoided the injury by like care.  *Shannon* v. *Railroad*, 71 N. H. 286.  The person injured may be incapable of taking care, and the railroad liable for negligent failure to discover him if they ought to have anticipated his presence in that condition.  *Edgerly* v. *Railroad*, 67 N. H. 312.  Such a case does not differ from that of property negligently permitted by the owner to be or to go in the way of the train.  *Laronde* v. *Railroad*, 73 N. H. 247.  The traveler may be discovered by the trainmen on the crossing, or approaching it as in this case, under circumstances indicating inattention to the train or the crossing.  In this situation, the cases cited hold that if ordinary men, with the information the trainmen have, would anticipate a collision at the crossing and avoid it, the trainmen's negligent failure to do so is the responsible cause of the injury. The rule of most general application deducible from the authorities is that the defendants are liable if, upon discovery of the danger, the plaintiff cannot save himself, while the defendants upon their discovery of the danger could have avoided the injury.  *Altman* v. *Railway*, 75 N. H. 573;  *Little* v. *Railroad*, 72 N. H. 61;  *S. C.*, 72 N. H. 502;  *Parkinson* v. *Railway*, 71 N. H. 28;  *State* v. *Railroad*, 52 N. H. 528.

As the negligence of the party injured in failing to observe the approach of the train continues until the very moment of the accident, or at least until it is too late for either party to avoid the injury, and since he could have stopped in a place of safety after the time when the trainmen could have done anything to prevent the accident, it has been claimed that if his negligent failure to observe

and stop is not subsequent to any negligence in the operation of the train, it is at least concurrent, and there can be no recovery. The conclusion that one conscious of danger of serious injury to a human being if he persists in the course which he is pursuing, which he can prevent by care, should be discharged from responsibility because of negligent ignorance of the danger in the person injured, ~ is so fundamentally unjust and contrary to natural reason that few · cases are to be found that carry the logic of the rule of contributory negligence to that extent. With substantial unanimity, recovery is permitted in such cases, either upon the ground that the lack of attention in the party injured is not the proximate cause of the injury, or that the failure of the trainmen to act under such circumstances so far partakes of the nature of a wanton or intentional wrong that the law as to contributory negligence has no application. *Murphy* v. *Deane*, 101 Mass. 455, 463; *Union Pacific Ry.* v. *Cappier*, 66 Kan. 649,—69 L. R. A. 516, note; *Dyerson* v. *Railroad*, 74 Kan. 528,—7 L. R. A. N. S. 132, note; 1 Thomp. Com. Neg., s. 238; 2 *Ib.*, s. 1598; Cool. Torts * 674. It may be that neither explanation is strictly logical, and that the real foundation for the rule is merely its fundamental justice and reasonableness. The justice of the rule, that "the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence" (*Grand Trunk Ry.* v. *Ives*, 144 U. S. 408, 429), may be a sufficient foundation for it.

Cases where at the time of the injury the plaintiff is not conscious of the danger in season to avert it, either because he is drunk, asleep, absorbed in introspection, or otherwise inattentive, while the defendant has knowledge of the danger, simply fall into the class where the defendant is present and the plaintiff is absent. They are governed by *Davies* v. *Mann*, 10 M. & W. 546. The result in that case would have been the same if the plaintiff had been asleep by the wayside within shouting distance of his donkey. The plaintiff's inability to control the situation is the test; and it is immaterial whether he is not in actual charge of the subject of injury because the absence of his body shows he could not have been, or the fact be proved by showing that for other cause he, himself, was not in control. Whether under such circumstances the defendant, upon the information he has, ought to have known of the plaintiff's condition—that he was drunk, asleep, non-judging, or not observing—bears on the defendant's negligence. If it cannot

be found he ought to have known the plaintiff's condition, he is not liable; if he ought, he may be.

"The law no more holds one responsible for an unavoidable, or justifies an avoidable, injury to the person of one who carelessly exposes himself to danger, than to his property similarly situated in his absence." The law deals with the behavior of the parties in the situation in which it finds them, regardless of how that situation was produced. If the two parties approach the point of collision asleep or inattentive, and neither wakes up or becomes alive to the situation, the concurrent negligence of both prevents a recovery from either; but if one wakes up, or becomes aware of the danger existing from the fact that another asleep or inattentive is thoughtlessly in danger of injury by him, his fault, if he can but does not avert the injury from such danger, is alone the cause of the subsequent injury. There is no difference between sailing the seas with a rudderless ship and traversing the highway with a rudderless mind. One knowing the situation, who can by care avert a collision and does not, is chargeable for the resulting loss, despite the uncontrolled character of the other's progress. *Nashua etc. Co.* v. *Railroad,* 62 N. H. 159.

The injury in this case arose because the defendants with their train and the deceased with her team both attempted to occupy at the same time a portion of a public highway which each had the right to use, but which neither had the right to occupy when it was in use by the other. Each was bound to such acts as would constitute care under the circumstances, to prevent an attempt at such joint occupation. While due care would ordinarily require that the wagon should wait and allow the train to go by, the failure to exercise such care and the negligent occupation of the crossing by the wagon gave the train no right to attempt to pass at the same time. *State* v. *Railroad,* 52 N. H. 528, 556; *Huntress* v. *Railroad,* 66 N. H. 185; *Gahagan* v. *Railroad,* 70 N. H. 441; *Little* v. *Railroad,* 72 N. H. 502, 503; *Continental Imp. Co.* v. *Stead,* 95 U. S. 161. Whether the use of the crossing at the time by the traveler was careful or negligent, the train could not lawfully use it while it was in use as a part of the highway. Having notice that the traveler was about to use it at a time when they could have refrained from entering upon it, they are as much in the wrong and as fully the sole authors of the resulting injury as the traveler would be who attempted to pass with knowledge that it was in use by the train.

The situation is simply this: Both parties were proposing to

exercise a common right which could not be enjoyed by both at the same time; the defendants knew of the deceased's proposed use; the deceased did not know the defendants' purpose. If the deceased was in fault for not knowing the defendants' desire then to pass over the crossing, the defendants were in fault for attempting to cross while the path was in use. As the deceased's negligent occupation of the crossing did not increase the defendants' right to use it, they cannot recover of her for injury from their wrongful attempt, but must pay the damage done to her by their wrongful act. As her negligent act gave them no right to cross, it is immaterial in her suit for the injury whether her act of which they had notice was negligent or careful.

*Exceptions overruled.*

WALKER and YOUNG, JJ., concurred.

BINGHAM, J., *dissenting.* In discussing the questions involved in this case, it is important to keep in mind that the only theory upon which the case was submitted to the jury was that of the "last clear chance" doctrine, and that by thus restricting the scope of the inquiry the court in effect ruled that the jury must assume that the deceased was negligent in driving her horse upon the crossing at the time of the accident. That this is a correct interpretation of the situation as presented to the trial justice is disclosed by an examination of the decision in *Gibson* v. *Railroad,* 75 N. H. 342, 344, where the court say: "This question [the one presented by the doctrine of the last clear chance] was submitted upon the assumption that the plaintiff's conduct in going upon the crossing might be found to be negligent." Now bearing this in mind, we will proceed to a discussion of what the last clear chance doctrine is and its application to the facts of this case.

In *Nashua etc. Co.* v. *Railroad,* 62 N. H. 159, 164, Judge *Carpenter,* in discussing this doctrine, said: "An accident may result from a hazardous situation caused by the previous negligence of one or both parties. If at the time of the injury the defendant is unable to remove the danger which his negligence has created, . . . the plaintiff can recover or not, according as, by ordinary care, he can or cannot protect himself from the natural consequences of the situation. If the plaintiff, in like manner, is unable to obviate the danger which his prior negligence has produced, . . . he can recover or not, according as the defendant, by the same degree of care, can or cannot avoid the natural consequences of such negli-

gence.   If due care on the part of either at the time of the injury
would prevent it, the antecedent negligence of one or both parties
is immaterial, except it may be as one of the circumstances by which
the requisite measure of care is to be determined.   In such a case the
law deals with their behavior in the situation in which it finds them
at the time the mischief is done, regardless of their prior misconduct.
The latter is   .   .   .   the cause of the danger; the former is the
cause of the injury."   This is the doctrine of the last clear chance
stated in a concise and comprehensive manner.   It is not the doc-
trine of comparative negligence in vogue in some jurisdictions, where
the jury, upon a consideration of all the evidence, are permitted to
say which of the contending parties is the more negligent of the two,
and to find a verdict for the least negligent,—a doctrine which, until
the decision of the majority of the court in this case, has not been
understood to be the law of this state,—but an application of the
principles of proximate and remote cause, under which a jury may
be permitted to say which of the parties had the last clear oppor-
tunity to avoid the natural consequences of the situation existing
at the time the mischief was done, regardless of whether that situa-
tion was produced by their prior negligence or was due to some other
cause.

The decision of the majority of the court in this case cannot be
sustained upon the doctrine of last clear chance, when correctly
stated and applied, but must look for its support to the doctrine of
comparative negligence, or be assigned to the realm of willful
injuries, in which negligence plays no part and with which it has
nothing to do.   This is readily appreciated when the facts relating
to the negligent conduct of the parties are considered.   From these
facts it appears that after the train was less than 500 feet from the
crossing, it was beyond the power of the engineer to stop it by the
exercise of any degree of care; while after that time, the deceased
by the exercise of ordinary care could have stopped her horse up to
within six feet of the crossing and prevented the collision.   Under
such a state of facts, it is apparent that the deceased and not the
railroad had the last clear chance to avoid the collision, and that
the negligence of the engineer in not undertaking to stop the train
before it reached a point less than 500 feet from the crossing was
a mere condition upon which the subsequent negligent conduct of
the deceased acted to produce the resulting injury.   After the train
was less than 500 feet from the crossing, the engineer was both
physically and mentally unable to remove the danger which his

prior negligence had created. The train was then beyond his control. His situation, so far as an application of the law of negligence is concerned, was like that of the drunken man asleep upon the track, in *Edgerly* v. *Railroad*, 67 N. H. 312. There the drunken man was unable to avoid being injured because he had lost control of his mental and physical powers. Here the engineer was unable to avoid a collision because his mental and physical powers were totally inadequate to control certain physical forces then in operation.

The motorman in the Edgerly case, had he been on the lookout and not negligently inattentive to his duties, could have seen the drunken man on the track, appreciated his condition, and when a sufficient distance away have stopped his car and avoided the accident. So the deceased in this case, had she not been negligently inattentive, could have seen the train approaching before she reached a point less than six feet from the crossing, have appreciated the fact that the train, going as it was at the rate of thirty-two miles an hour, could not be stopped before reaching the crossing, and have avoided a collision by stopping her horse. She had driven over the crossing many times. She knew that trains were liable to be passing over it, and it was her duty to be on the lookout, the same as it was the duty of the motorman in the Edgerly case. What she would have known and appreciated had she exercised care and been on the lookout, she is in the law of negligence held to know and appreciate. A person "can no more recover for an injury caused by driving into a dangerous pit of which he is ignorant, but of which ordinary care would have informed him, than for one caused by carelessly driving into a known pit." *Nashua etc. Co.* v. *Railroad*, 62 N. H. 159, 162. And so it is with the deceased.

The difficulty we are now experiencing with the last clear chance doctrine is due to the fact that it has been misstated and misapplied in certain recent grade crossing cases. It was misstated in *Gahagan* v. *Railroad*, 70 N. H. 441, and is misstated and misapplied in *Little* v. *Railroad*, 72 N. H. 61, *Yeaton* v. *Railroad*, 73 N. H. 285, and in the present case.

In *Gahagan* v. *Railroad*, *supra*, 450, where the engineer saw the plaintiff going toward the track without observing the approaching train, it was said: "If the engineer knew or ought to have known that the plaintiff's negligence would place him upon the crossing when the train reached it, the engineer was equally bound to avoid the collision as if he saw the plaintiff actually on the track."

In *Little* v. *Railroad, supra,* 62, where the motorman saw the plaintiff approaching the track without observing the car and thought he was intending to cross, the above statement from *Gahagan* v. *Railroad* was applied, and it was said that the jury were warranted in finding "that the accident was due solely to the negligence of the defendants' motorman in not seasonably stopping the car after he saw the plaintiff turn his horses toward the track, apparently intending to cross in front of the car, and when he knew or ought to have known that the plaintiff's negligent purpose, if carried out, would place him upon the track when the car reached the place where he was crossing."

And in *Yeaton* v. *Railroad, supra,* 286, 287, where the fireman saw Yeaton approach the crossing without observing the train until he was within thirty feet of the track, and then, observing its approach, urge his horse forward upon the track, and where the question of negligence submitted to the jury was "whether the defendants' servants in charge of the train, observing the deceased's proximity to the railroad, did all they ought to have done to prevent the collision, after they knew or ought to have known of his attempt to cross the track," the court, relying upon the Gahagan and Little cases, held: "If men of ordinary prudence in the position of the defendants' servants would have known that Yeaton's act would place him upon the crossing at the time the train would reach it unless they did something to check the speed of the train, and could and would have avoided the collision, the failure of the trainmen to act with ordinary prudence was the legal cause of the injury. Upon the only ground of negligence charged against the defendants, Yeaton's conduct in attempting to cross under the circumstances, whether prudent or otherwise, was immaterial. . . . The defendants were not injured by the submission of the question of the plaintiff's care in attempting to cross the track, even if there were no evidence upon which it could be found that a man of ordinary prudence would have made the attempt."

These statements are clearly misleading, and are incorrect in so far as they convey the idea that the conduct of the defendants' servants in not stopping the train was the sole cause of the collision, if they knew or ought to have known that the plaintiff's negligent purpose if carried out would place him upon the track, and that the plaintiff's conduct after the defendants were or should have been so informed, whether prudent or otherwise, was immaterial, for the reason that the plaintiff's negligence did not cease to

be a contributing cause and become a mere condition until after the time arrived when the plaintiff was in a place of danger from which he could not extricate himself and avoid being injured by the exercise of due care. When that time arrived was question of fact; and evidence in support thereof should have been submitted before the jury could properly be instructed that the defendants' failure to learn of the plaintiff's presence and to avoid injuring him could be found to be the sole cause of his injury. The earliest moment at which the plaintiff's purpose to go into a place of danger was or should be known by the defendants is not the period from which their failure to act renders their conduct the sole cause; for until the plaintiff's purpose is executed, and he is in a position of danger from which he cannot escape by the exercise of due care, he may abandon his negligent purpose, remain out of danger, and thus avoid being injured. And so long as he can avoid injury by the exercise of care, his negligent failure to do so is a contributing cause. It can make no difference whether a person entertains a negligent purpose to go into a position of danger, which purpose he may abandon, or, being in a position of danger, negligently purposes to remain there, although he could abandon his purpose and move to a place of safety.

The latter supposition is the exact situation that was before the court for consideration in *Shannon* v. *Railroad*, 71 N. H. 286. In that case the plaintiff's intestate, while standing in a position of danger upon a railroad bridge, apparently intending to remain until the train passed although he could have moved to a place of safety, was seen by the trainmen, who knew or could have known his intention and have avoided injuring him by stopping the train. It was held: "If, after the engineer saw that Beede was apparently intending to remain in his position, the engineer could, and in the exercise of ordinary care ought to, have attempted to avoid the collision, Beede . . . might during this interval of time have avoided the collision by an exercise of like care. . . . Without his negligence the collision would not have occurred. . . . If his negligence was not the [legal or] proximate cause of his death, it was a contributing cause, and in either event his representative is not entitled to recover damages of the defendants therefor." In short, it was there held that the fact a person is in a position of danger and purposes to remain there, which purpose is known to the person sought to be charged with responsibility for his injury, does not make his negligent conduct in being and purposing to remain

where he is a mere condition upon which the defendants' negligence acts as the sole cause, unless he could not by the exercise of care have avoided injury by abandoning his purpose and removing to a place of safety. If failure to realize one's danger and to move into a place of safety may be found to be a contributing cause, so failure to learn of a danger one is approaching and to stop before coming into the plane of danger may be found to be a contributing cause; and it would not cease to be such and became a mere condition until after he reached a position of danger from which he could not extricate himself by ordinary care.

When the case of *Little* v. *Railroad* was before the court the second time (72 N. H. 502, 503) the rule of law was correctly stated and applied. It is there said "that impartial men might reasonably find upon a consideration of the testimony, that after the plaintiff's negligence in approaching the track had brought him to a situation of actual danger, he might be unable to avoid a collision with the approaching car by the exercise of ordinary care; . . . and that the motorman, by an exercise of like care, might have avoided the collision after he discovered the plaintiff was in such situation."

As the evidence in the present case would not warrant a finding that the defendants had the last clear chance of avoiding the accident, and as the doctrine of comparative negligence is not a part of our law (*Gregg* v. *Company*, 69 N. H. 247, 251), I am of the opinion that the verdict for the plaintiff should be set aside; but as there was evidence from which it could be found that the injury to the deceased was willfully inflicted, I am also of the opinion that the plaintiff should be permitted to amend his declaration and have the case submitted to the jury upon that issue.

I am authorized to say that Judge *Peaslee* concurs in this opinion.