## JAFFE v. PHILADELPHIA & WESTERN R. CO.

### No. 9958.

United States Court of Appeals
Third Circuit.

Argued Oct. 14, 1949.

Filed March 15, 1950.

As Amended April 19, 1950.

See, also, D.C., 80 F.Supp. 416.

B. Nathaniel Richter, Philadelphia, Pa. (D. J. Farage, Richter, Lord & Farage, Philadelphia, Pa., on the brief), for appellant.

Charles J. Biddle, Philadelphia, Pa. (Francis Hopkinson, Drinker, Biddle & Reath, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN and KALODNER, Circuit Judges, and FEE, District Judge. ·

McLAUGHLIN, Circuit Judge.

This is a negligence action involving the death of plaintiff's intestate. It was tried to the court sitting without a jury. From a judgment in favor of the defendant, plaintiff appeals.

Before considering the merits, there is a preliminary jurisdictional problem that must be passed upon. The accident happened in Pennsylvania. The deceased was a resident of that state as were, and are, his widow and children and the defendant corporation. Concededly, Pennsylvania law governs recovery. The first count in the complaint was under the Pennsylvania wrongful death statute [1] and the second under that state's survival law.[2] Primarily because it was desired to bring the matter in the federal court, a stenographer in the office of the widow's attorneys, who is a New Jersey resident, was appointed administratrix ad prosequendum of the deceased's estate.

Suit was started and thereafter the defendant moved to dismiss it on the grounds that it did not truly involve a dispute between citizens of different states and that it was a collusive and colorable attempt to install a citizen of another state as plaintiff where the widow and the other real parties in interest have retained their beneficial rights. The Court below denied the motion and proceeded to hear the matter on its merits.

The action is in the district court because of diversity of citizenship.[3] At the time suit was started and the motion made and decided, 28 U.S.C. § 80 was in ef-

---

1. Act 1937, P.L. 196, Purdon's Pennsylvania Stat. 12, Section 1602.
2. Act 1937, P.L. 2755, Purdon's Pennsylvania Stat. 20, Section 772.
3. Title 28 U.S.C. § 41(1) since replaced by Section 1332 of Title 28 U.S.C. effective September 1, 1948. As far as the point here involved is concerned, there is no

fect.[4] It provided that if parties to such suit as the one at bar "have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this chapter, the said district court shall * * * dismiss the suit."

On the problem involved, while there is some difference of opinion, the weight of authority unquestionably supports the decision of the District Court. The administrator here was properly appointed in Pennsylvania. There is no attack on that appointment as such and the motive that actuated it "is immaterial upon the question of identity or diversity of citizenship." Harrison v. Love, 6 Cir., 81 F.2d 115, 117. As Judge Martin says in his excellent opinion in an almost identical case, an administrator plaintiff in this type of action qualifies if he "presents a justifiable demand and the requisite diversity of citizenship". Stewart v. Patton, D.C.W.D.Tenn., 32 F.Supp. 675, 676. In Goff's Administrator v. Norfolk & W. R. Co., C.C.W.D.Va., 36 F. 299, another such decision, speaking of the administrator plaintiff, the Court said, page 301, "He is authorized by the Virginia statute * * * to bring this suit. He is the only party that could maintain it."

Both the Harrison and Stewart opinions rely in large measure upon Mecom, Adm'r v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233, 77 A.L.R. 904. There, a citizen of Oklahoma died of injuries alleged to have been caused by a Louisiana corporation. His widow, who had been appointed administratrix, sued for the death in the Oklahoma state court. The defendant removed the suit to the federal side because of diversity. The widow had her action dismissed and resigned as administratrix. At her request, the Oklahoma probate court appointed a citizen of Louisiana as administrator and a new action was commenced in the state court by the widow, acting as the administrator's

agent for the purpose of the suit. The defendant removed the case to the federal district court where a motion by the administrator to remand was overruled. A trial on the merits resulted in a judgment for the defendant. The Circuit Court of Appeals for the Tenth Circuit affirmed the refusal to remand and the judgment on the merits. 47 F.2d 28. The Supreme Court granted certiorari and reversed the Circuit Court, holding that the motion to remand should have been allowed; the fact that the administrator was appointed solely for the purpose of defeating diversity jurisdiction was of no importance. Mr. Justice Roberts said for the Court, 284 U.S. at page 190, 52 S.Ct. at page 87: "The case comes to no more than this: There being, under Oklahoma law, a right to have a nonresident appointed administrator, the parties in interest lawfully applied to an Oklahoma court, and petitioner was appointed administrator, with the result that the cause of action for the wrongful death of the decedent vested in him. His citizenship being the same as that of one of the defendants there was no right of removal to the federal court; and it is immaterial that the motive for obtaining his appointment and qualification was that he might thus be clothed with a right to institute an action which could not be so removed on the ground of diversity of citizenship." For discussions of the Mecom opinion see 45 Harv.L.Rev. 743, 744; 41 Yale L.J. 639, 641.

Supporting the general proposition that when a representative party sues his citizenship controls if he is the real party litigant, see: Bunn, Jurisdiction and Practic of the Courts of the United States, 5th ed. p. 40; Rose's Federal Jurisdiction and Procedure, 3rd ed. p. 273; Dobie on Federal Procedure, Chap. 3, Section 64, p. 185.

It cannot be successfully contended that here the administratrix is not a real party in interest. As appellant urges, in accordance with her oath and bond to the Reg-

substantial difference between the old and the new statutes.

**4.** This has been replaced by Section 1359, Title 28 U.S.C.A., effective September

1, 1948. As far as the present question is concerned there is no substantial difference between the old and the new statutes.

ister of Wills, she assumed the duty "to demand, collect, sue for, recover and receive" the sole asset of the decedent, the cause of action against the defendant herein. In event of recovery, she, as administratrix, is bound to distribute the proceeds thereof to the proper parties. As Mr. Justice Roberts said in the Mecom opinion, 284 U.S. page 189, 52 S.Ct. page 87: "To go behind the decree of the probate court would be collaterally to attack it, not for lack of jurisdiction of the subject-matter or absence of jurisdictional facts, but to inquire into purposes and motives of the parties before that court when, confessedly, they practiced no fraud upon it."

It is interesting to note that the Circuit opinion in the Mecom matter relied in part upon Cerri v. Akron-People's Telephone Co., D.C.N.D.Ohio, 219 F. 285. The latter is the one decision which flatly upholds the proposition that diversity obtained as in the situation before us is collusive and contrary to the governing federal statute.[5] The Cerri administrator, who was appointed in order to obtain diversity of citizenship between the parties, was an alien and citizen of Italy who was then a consular agent for the Kingdom of Italy. To some extent criticism of an alien injecting himself into such proceeding under the particular circumstances entered into the Court's findings and does tend to weaken its interpretation of Section 80. It should be also remarked that the Harrison case of the Court of Appeals for the Sixth Circuit, decided in 1936, is the present law of that Circuit and supersedes the Cerri District Court opinion of 1914, which was within that Circuit, and which was not appealed. Professor Moore, in his Federal Practice, 2 Ed., Vol. 3, Sections 17.03 to 17.05, citing the Cerri decision, says, at page 1320, " * * * the real party in interest rule may not be manipulated for the purpose of founding jurisdiction."[6] He also contends that " * * * there is no federal legislative policy against an *avoidance* of federal juris-

diction". It is true that there was no federal statute on collusive joinder of parties at issue in Mecom. Nevertheless, as the Supreme Court ruled in that case, the state probate court decree cannot be attacked collaterally to question the purposes behind it.

The broad language of the Mecom opinion unmistakably indicates that the District Court had jurisdiction of the suit at bar. Diversity of citizenship exists between the parties and this was not obtained by collusion within the meaning of the federal statute. The action of the District Court in denying the motion was proper.

This brings us to consideration of appellant's argument on the merits of the case. Rodell G. Dorsey, plaintiff's decedent, on September 21, 1946, was twenty-nine years old and resided in Norristown, Pennsylvania. A few minutes before midnight on that date he, with his five year old son, boarded appellee's trolley car at its 69th Street Station in Philadelphia. It was a dark, misty night. The trolley's destination was Norristown. The District Judge found as a fact that, at the time, Dorsey "was intoxicated but by no means helpless—unsteady, but not noticeably staggering, much less floundering." He did not pay his fare when requested, or at all. Soon after the trolley was under way he became embroiled in quite a fracas at the rear of the car. Around 12:20 A.M. the car stopped at appellee's Villanova station and Dorsey and his boy alighted voluntarily. The lower Court found that the small Villanova station was properly lighted. It had no ticket office and no station employees. Ten minutes later Dorsey was struck and killed by another of the appellee's cars on the northbound track about 1,000 feet north of the station. In the area of the accident, appellee's tracks run on a private right of way approximately north to Norristown, south to Philadelphia. The little boy was on the right bank, to the east of the tracks. He was not hurt.

---

5. Carter v. St. Louis-San Francisco Ry. Co., D.C.Okl., 29 F.2d 628, involved substantially the same factual setup as in Mecom. It was decided partly on the ground that the administrator was a mere nominal party. It is overruled in effect by Mecom.

6. There is support for Professor Moore's position in 30 Mich.L.Rev. 1341.

Appellant's first point is that appellee was negligent in taking decedent from a place of safety and abandoning him at a place of danger, without exercising reasonable care which was necessary to safeguard him, in view of his intoxicated condition. The finding of the District Court as to Dorsey's condition is supported by substantial evidence. We have no right to disturb it. According to that finding, Dorsey was "by no means helpless". In that situation, appellee was entitled to permit him to leave the car, as he wished, at the Villanova station. Dorsey lived in Norristown but the car operator did not know that; in fact, the car operator did not know anything about Dorsey's destination. The District Judge found, as he could from the evidence, that, in the circumstances, the station was a place of safety. Appellee's obligation extended no further than that. Hamilton v. Pittsburgh & L. E. R. Co., 183 Pa. 638, 641, 38 A. 1085; Moore v. Philadelphia Rapid Transit Co., 87 Pa.Super. 393, 395; Murphy v. Boston & Maine R. R. Co., 216 Mass. 178, 103 N.E. 291, 292; Edgerly v. Union St. R. Co., 67 N.H. 312, 36 A. 558. The decisions cited by appellant are not to the contrary. They are all distinguishable from the present facts.

The other point urged is that Dorsey's death was caused by the wanton negligence of the operator of the second trolley car. The District Judge found that the second car, prior to the accident, was traveling from Villanova to Norristown at about 20 to 25 miles an hour. The track was straight, with a two per cent down grade. The headlight was on full. To the left, the west, was the southbound track. Between the two tracks were two protected third rails. On either side of the tracks were steep banks rising 4 to 5 feet from the rails and covered with bushes and heavy underbrush. The west bank was 20 feet high, the east bank a little less. The operator saw the Dorsey boy on the right bank when the car was about 300 feet

south of where Dorsey was struck. The operator slowed his car somewhat. Then, as the District Judge said, "Before the car reached the boy, Dorsey suddenly appeared on the southbound track, crossing it from the left, darted or lunged in front of the car, was struck by its left front corner and killed." The operator testified that he first saw Dorsey on the southbound track, not more than 15 feet away. The Court found that this was not improbable, considering that it was a misty night and that Dorsey might have been on the bank concealed or partially concealed by the bushes.

The Court found that the operator was not guilty of wanton negligence. He further found Dorsey was a trespasser [7] and contributorily negligent.[8] The evidence is ample to justify those conclusions.

The judgment of the District Court will be affirmed.

---

7. See Tedesco v. Reading Company, 147 Pa.Super. 300, 304, 24 A.2d 105; Frederick v. Philadelphia Rapid Transit Co., 337 Pa. 136, 139, 10 A.2d 576.

8. See Ferencz v. Pittsburgh Ry. Co., 341 Pa. 369, 374, 19 A.2d 385; Lieberman v. Pittsburgh Rys. Co., 305 Pa. 412, 416, 157 A. 905.