## McCABE v. AMERICAN WOOLEN CO.

(Circuit Court, D. Massachusetts. July 10, 1903.)

### No. 1,271.

**1. NEGLIGENCE—PLACES ATTRACTIVE TO CHILDREN—CANAL—RAILINGS.**

Maintenance of an unguarded canal, having precipitous banks, through a thickly settled portion of a town, to conduct water to defendant's mills, was not, on the allegations of the declaration in this case, such negligence as to sustain a recovery for the death of a child five years of age, who fell into the canal and was drowned.

---

¶ 1. See Negligence, vol. 37, Cent. Dig. §§ 47, 55, 56.

James H. Rickard, Jr., for plaintiff.
Whipple, Sears & Ogden, for defendant.

PUTNAM, Circuit Judge. This case is based on statutes of Massachusetts which are now represented by section 2, c. 171, p. 1544, of the Revised Laws of Massachusetts of 1902, as follows:

"If a person or corporation by his or its negligence, or by the gross negligence of his or its agents or servants while engaged in his or its business, causes the death of a person who is in the exercise of due care and not in his or its employment or service, he or it shall be liable in damages in the sum of not less than five hundred nor more than five thousand dollars, to be assessed with reference to the degree of his or its culpability or of that of its agents or servants, to be recovered in an action of tort, commenced within one year after the injury which caused the death, by the executor or administrator of the deceased, one-half thereof to the use of the widow and one-half to the use of the children of the deceased; or, if there are no children, the whole to the use of the widow; or, if there is no widow, the whole to the use of the next of kin."

It was decided in the Circuit Court of Appeals for this Circuit, in Boston & Maine Railroad v. Hurd, 108 Fed. 116, 47 C. C. A. 615, 56 L. R. A. 193, that the statutes of Massachusetts of this character are remedial, furnishing a remedy at civil law, so that the federal courts have jurisdiction under them.

Patrick F. McCabe was a minor at the date to which the pleadings in this case related. He was then a resident of Blackstone, in the county of Worcester. The declaration alleges as follows:

"That defendant is a corporation organized under the laws of the state of New Jersey, and a citizen of said state of New Jersey; that the defendant, on the 28th day of May, A. D. 1902, and for a long time prior thereto, was the owner of a certain tract of land, lying in said Blackstone, near the Blackstone river, which land was intersected by streets and highways, and around and near which ran streets and highways, and upon which the defendant maintained numerous dwelling houses, which it rented to many persons and families; that said land is situated in a populous portion of said town, and closely adjoining said land were many other dwelling houses occupied by many other persons and families, in one of which last-mentioned houses said deceased dwelt on said date, and had dwelt for a long time theretofore; and that many of the said persons so occupying the said dwelling houses of the defendant and the said other dwelling houses were children of tender years, as the defendant well knew, or by the exercise of due diligence might have known.

"And the plaintiff further says that upon and in said land of the defendant the defendant on said date, and for a long time theretofore, maintained an artificial canal or mill trench, the water to supply which was taken from said Blackstone river at a point above said land of the defendant, and flowed thence through and across said land, and across St. Paul street, so called, one of the highways above mentioned, in close proximity to said dwelling houses and to the house in which said deceased lived; that at the upper part of said canal or mill trench and near the place of the fatality hereinafter set forth, the defendant maintained headgates, so called, through and under which the water in said canal flowed; that below said headgates, at the place where said fatality occurred, the banks of said canal or mill trench were steep and precipitous, and the water therein was deep and flowed with a swift current, by reason of all of which said canal or mill trench was dangerous to children who might be upon or near the banks thereof, as the defendant well knew, or by the use of due diligence might have known.

"And the plaintiff further says that, because of the location and character of said canal or mill trench, it was an object attractive and enticing to children, and constituted an allurement, inducement, and invitation to children to frequent the banks thereof for the purpose of amusement and play, and that the said children dwelling in the defendant's said houses and in the said other houses in the vicinity were in the habit of frequenting said banks for the purpose of amusement and play, all of which the defendant well knew, or by the use of due diligence might have known.

"And the plaintiff further says that by reason of the premises it became and was the duty of the defendant to maintain about and upon said canal or mill trench proper fences, coverings, or other safeguards to prevent children so frequenting said banks, or being thereon as a result of the defendant's said allurement, inducement, and invitation, from reaching the water in said canal or mill trench, and so to keep them from the danger of injury or death by falling into said canal; but that the defendant, wholly neglecting its said duty, negligently and carelessly failed to provide any such fences, coverings, or other safeguards, and permitted its said canal or mill trench to remain and be unfenced, unguarded, uncovered, and open, so that children from the defendant's said dwelling houses and from the said other dwelling houses in the vicinity could freely pass onto and across said land to said canal or mill trench, both directly from the defendant's said dwelling houses and from the said streets and highways which intersect and lie about said land.

"And the plaintiff further says that on said 28th day of May, A. D. 1902, said Patrick F. McCabe was a child of tender years, to wit, of the age of five years, and, being allured, enticed, attracted, and invited to said canal or mill trench as aforesaid, was, by reason of the said negligence of the defendant, upon the bank of said canal or mill trench, near said headgates, engaged in play, and while there, by reason of said negligence of the defendant, the said Patrick F. McCabe, while in the exercise of due care, fell into said canal or mill trench and was drowned."

The defendant demurred to the declaration, and also answered it, not waiving the demurrer. The plaintiff demurred to the answer. By agreement of parties the case was heard on both demurrers; it being stipulated that each party should have the benefit of his demurrer notwithstanding the condition of the pleadings in other respects, and that both demurrers should be heard and disposed of by the court. We will consider first the demurrer of the defendant, because, if that is sustained, it will not be necessary to go further.

The plaintiff relies on Railroad Company v. Stout, 17 Wall. 657, 21 L. Ed. 745, and Union Pacific Railway v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434. The latter case reaffirms Railroad Company v. Stout; but it may as well be laid out of the way, because it is difficult to determine whether it was adjudged on the authority of Railroad Company v. Stout or on the old rule with reference to pitfalls and other dangerous traps. The "burning slack" complained of in Railway v. McDonald was, indeed, an unguarded pitfall of a concealed, dangerous, and most reprehensible character. The opinion is a very long one, and it is not to be presumed that it received throughout the concurrence of all the Justices of the Supreme Court, or even of a majority of them. It falls within that class of opinions as to which what is not absolutely necessary to the conclusion must be regarded as dicta. For these reasons, we need not consider it further.

Railroad Company v. Stout has been expressly repudiated by the Supreme Judicial Court of Massachusetts in Daniels v. New York &

New England Railroad Company, 154 Mass. 349, 28 N. E. 283, 13 L. R. A. 248, 26 Am. St. Rep. 253. It has also been repudiated in New Hampshire, and it is doubtful whether it is regarded as law in any part of New England. However, we need not discuss the question whether we are bound by Daniels v. New York & New England Railroad Company, because that case is easily distinguishable from Railroad Company v. Stout. There is no doubt that Railroad Company v. Stout recognizes that the law requires certain care and caution with reference to children of tender age, even when they are trespassers, which would not be required with regard to adults; so that the result of that case would not have been as it was except for that distinction. What was there complained of was a turntable, which the opinion, at page 662, 17 Wall., and page 748, 21 L. Ed., says several boys had been at play upon "on other occasions," meaning other previous occasions, "and within the observation and the knowledge of the employés" of the defendant corporation. Also, on the same page, it refers to "the remoteness of the machine from inhabited dwellings." In the case at bar the canal in which the deceased was drowned was in the immediate neighborhood of inhabited dwellings, and apparently in the neighborhood of the place where his parents resided. The opinion in Railroad Company v. Stout does not directly affirm that this remoteness of the turntable was of consequence; but it states it, and the statement of it leads to one suggestion which essentially distinguishes Railroad Company v. Stout from the case at bar, to which we will refer again. Further, on the same page, the opinion points out that the turntable was out of repair. It says that there was on it "a heavy catch, which, by dropping into a socket, prevented the revolution of the table." It also says: "It was proved to have been usual with railroad companies to have upon their turntables a latch or bolt, or some similar instrument." This catch weighed some eight or ten pounds, and had been broken off and not replaced. The plaintiff was injured by the revolving of the table, which the opinion says "could probably have been prevented by the repair of the broken latch." In view of these facts, the opinion continues to the effect that the jury might have "reached the conclusion that the defendant had omitted the care and attention it ought to have given, that it was negligent, and that its negligence caused the injury to the plaintiff." The opinion further observes: "The evidence is not strong, and the negligence is slight; but we are not able to say that there is not evidence sufficient to justify the verdict." All this leaves the inference that the case turned on the facts that the jury found that the corporation was negligent in not keeping in repair what it was usual to have on turntables of the kind in question, and that the injury would not have happened except for this negligence. In the present case, there is no allegation that it is usual to guard banks of either natural or artificial streams under the circumstances stated. Therefore, in two respects this case differs from Railroad Company v. Stout, namely: There is nothing to suggest that it was the duty of the defendant here to maintain a guard, or that it undertook to maintain one, and failed to keep it in proper order.

In another and more important particular the case differs from

Railroad Company v. Stout. We refer to what is suggested by the fact that the turntable there in question was remote from inhabited dwellings. In this connection we might undertake to sift out the various decisions, but it would be useless to attempt it. They present a great many phases, some of them going so far as to leave the impression that they were controlled less by regard to the rules of law than by sympathy for the sufferings of children and the inability of their natural guardians to care for them. The cases are fully grouped in Thompson on Negligence (1901) § 1024 et seq. While some of them hold the owners of real estate liable for unguarded pools of water, and unguarded "deep reservoirs", into which children have fallen while at play, yet there is certainly nothing in any decision among them of an authoritative nature, or in the principles which they properly develop, which requires us to go so far as the plaintiff demands in the present case. Railroad. Company v. Stout and Union Pacific Railway v. McDonald both relate to something which was temporary, not entirely open to observation, and unexpected, and consequently of such a character that the proprietor of the land on which it was situated could not justly anticipate that the parents would be continuously cautioned against it, and thus advised to protect children from injury thereby. The case at bar, however, is essentially distinct in this particular. This canal was permanent, open, and plain to view, as much so as though it had been a natural stream, and suggests nothing whatever which would change the relations of the parties from what they would have been had it been a brook or a river. If the defendant is to be holden to this plaintiff for not especially guarding it, then the customs of the community must be changed throughout, because it is impossible to distinguish this canal, for the purpose of this case, from a river or a brook, a hay mow, an ox cart left in a farmer's yard, a high ledge, or a field trench, about either of which children may happen to be accustomed to play. We think, therefore, that this canal was an object of such a character that, both from the reason of the thing and the customs of the community, the defendant was entitled to assume that the plaintiff's natural guardians would protect him from any dangers attached thereto, as they easily could and ought to have done. Therefore, on account of the various distinctions which we have pointed out, and the reasons which we have stated, this suit cannot be maintained.

We have said that the defendant filed an answer, and that that answer was demurred to; but, as already suggested, we do not deem it necessary to enter into a full discussion of the questions thus raised. The answer sets up in substance the defense which was sustained by the Supreme Judicial Court of Massachusetts in Grant v. City of Fitchburg, 160 Mass. 15, 35 N. E. 84, 39 Am. St. Rep. 449, to the effect that the parents of the child allowed it to remain unattended. The statute on which this suit is based in this respect is the same as the statute under consideration in Grant v. City of Fitchburg, which was also, like this at bar, an action for the death of a child of tender age against the city of Fitchburg. The court, however, held that the inattention of the parents was a defense to the suit,

independently of the question whether or not the defendant was negligent. The inattention in that case was not of a more serious character than that alleged at bar, and is, therefore, in truth a determination by the highest local tribunal of the effect to be given to the expression "due care," found in the statute now under consideration. According to numerous decisions of the Supreme Court, Grant v. City of Fitchburg is, therefore, probably conclusive on us. However, we rest the case where it would stand independently thereof.

The demurrer of the defendant is sustained, the declaration is adjudged insufficient in law, and the defendant is to have judgment, with costs.