## REED & BARTON CORPORATION v. MAAS.
### No. 2914.

Circuit Court of Appeals, First Circuit.
Nov. 10, 1934.

Albert A. Schaefer, of Ropes, Gray, Boyden & Perkins, of Boston, Mass., for appellant.

J. Alex. Lane, of Gaston, Snow, Saltonstall & Hunt, of Boston, Mass., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is an action of tort for injuries alleged to have been caused by the appellant's negligence. The appellee is a minor and brought this action in the name of her father as next friend. The minor will hereinafter be referred to as the plaintiff and the appellant as the defendant.

The plaintiff is a resident of Wisconsin, and the defendant is located in Massachusetts. The ad damnum was $25,000.

The defendant is a manufacturer of coffee urns and in 1924 sold the urn involved in this case to one Horace E. Keebler of Milwaukee, Wis., engaged in the catering business, who, in September, 1931, loaned the urn to Mrs. George Gessner of Milwaukee to be used in serving coffee at a social tea given for her daughter.

The plaintiff was invited to pour coffee, and at the time of the accident was seated at one end of a table. The coffee urn had been filled with hot coffee in the kitchen and brought and placed on the table directly in front of the plaintiff. The coffee was kept hot while being served by means of a spirit lamp of common design, which was lighted before the urn was brought into the dining room in which it was served.

The urn had been on the table about fifteen minutes and the plaintiff had served three or four guests, the last one about five minutes before the accident. Suddenly, without warning, the urn toppled over, spilling the hot coffee into the lap of the plaintiff, severely burning her hands, body, and legs.

The defendant moved for a directed verdict on the ground that the defendant owed no duty to the plaintiff and there was no substantial evidence that the plaintiff's injuries were due to the defendant's negligence. This motion was denied, but the trial court took an alternative verdict, so called. The jury awarded the plaintiff $4,000 as damages, but added, according to the customary form of alternative verdicts, that "if, as a matter of law, the plaintiff is not entitled to a verdict, then the jury find for the defendant and consent that this verdict may be entered on order of the United States District Court for the District of Massachusetts, or of the United States Circuit Court of Appeals for the First Circuit, or of the Supreme Court of the United States, with same effect as if returned by them."

Thereupon the defendant filed a motion for a new trial and also that the jury's verdict be set aside and a verdict be entered for the defendant pursuant to the alternative verdict of the jury.

The District Court denied the motion for a new trial, and by a memorandum decision denied the motion to set aside the verdict.

Exceptions were taken by the defendant to rulings by the court in its memorandum decision, and the court's refusal to direct a verdict for the defendant.

The issues raised by the defendant by its assignments of error may be considered under two heads: (1) The law governing the rights of the parties; (2) whether there was any substantial evidence warranting the jury in finding that the plaintiff's injuries were due to the negligence of the defendant.

The first issue raises the question of whether a manufacturer of an article not inherently dangerous owes any duty to a third party injured in its use, if the injuries arose from some defect in the article due to the negligence of the manufacturer.

Under the law of Massachusetts a manufacturer owes no such duty in the case of an article not inherently dangerous (Lebourdais v. Vitrified Wheel Co., 194 Mass. 341, 80 N. E. 482; Windram Manufacturing Co. v. Boston Blacking Co., 239 Mass. 123, 131 N. E. 454, 17 A. L. R. 669); but under the laws of Wisconsin, in this case the lex loci delicti, the manufacturer of an article, though not inherently dangerous, but due to the negligence of the manufacturer it is probable that injuries will result from its proper use, is liable for any injury due to such negligence (see Bright v. Barnett & Record Co., 88 Wis. 299, 60 N. W. 418, 26 L. R. A. 524; Miller v. Mead-Morrison Co., 166 Wis. 536, 166 N. W. 315; Flies v. Fox Bros. Buick Co., 196 Wis. 196, 218 N. W. 855, 60 A. L. R. 357). In the latter case the Wisconsin court expressly adopt-

ed the rule laid down in the case of MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F, 696, Ann. Cas. 1916C, 440 (opinion by Mr. Justice Cardozo). Also see Marsh Wood Products Co. v. Babcock & Wilcox Co., 207 Wis. 209, 240 N. W. 392.

Ordinarily, the lex loci delicti governs in actions of tort. Jarrett v. Wabash Ry. Co. (C. C. A.) 57 F.(2d) 669, 671; Restatement, Conflict of Laws, § 411; Northern Pacific R. R. v. Babcock, 154 U. S. 190, 197, 14 S. Ct. 978, 38 L. Ed. 958.

We think there was no error in the District Court applying the law of Wisconsin in this case.

It is not necessary to decide whether a federal court is bound to follow the rule in the lex loci delicti, if it differs from the rule in the federal courts. The decisions, however, indicate that the rule applied in the federal courts is not contra to that in Wisconsin and New York. Huset v. J. I. Case Threshing Machine Co. (C. C. A.) 120 F. 865, 61 L. R. A. 303; Keep v. National Tube Co. (C. C.) 154 F. 121; National Pressure Cooker Co. v. Stroeter (C. C. A.) 50 F.(2d) 642, certiorari denied 284 U. S. 674, 52 S. Ct. 129, 76 L. Ed. 570; Johnson v. Cadillac Motor Co. (C. C. A.) 261 F. 878, 8 A. L. R. 1023; Employers' Liability Assur. Corporation, Limited, v. Columbus McKinnon Chain Co. (D. C.) 13 F. (2d) 128; Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 29 S. Ct. 270, 53 L. Ed. 453; Tom v. Nichols-Fifield Shoe Machinery Co. (C. C. A.) 215 F. 881.

It is urged by the defendant that National Savings Bank v. Ward, 100 U. S. 195, 25 L. Ed. 621, and McClaren v. United Shoe Machinery Co. (C. C. A.) 166 F. 712, indicate that a different rule from that applied in Wisconsin is held in the federal courts, but we think these cases are not in point and do not indicate that the rule usually applied in the federal courts differs materially from that in Wisconsin and New York.

The Ward Case did not involve a personal injury. In the McClaren Case above cited, the action was against the manufacturer, but under two of the counts in the plaintiff's declaration, the employer of the injured workman was alleged to have agreed to keep the machine in good working order. A third count was based on a contract of the manufacturer to keep the machine in repair. The court found there was no such promise by the manufacturer, and ordered a verdict for the defendant. In a second suit based on the agreement of the employer to keep the machine in repair, the jury awarded a verdict for the plaintiff. See McClaren v. Weber Bros. Shoe Co. (C. C. A.) 166 F. 714.

We think the District Court in the instant case correctly instructed the jury that a coffee urn, when properly constructed, was not inherently dangerous; but if by reason of a defect caused by the negligence of the manufacturer it becomes an article fraught with danger to anybody using it, the manufacturer may be held liable for the consequences of that negligence to any person using it for the purpose and in the manner it was intended to be used, though not a party to a contract with the manufacturer.

He also gave a further instruction at the request of the defendant as follows:

"An article which is normally and naturally harmless does not become inherently dangerous, because if defective in its construction it may make a possibility of endangering the persons using it. It is not enough that the article by reason of its defective design or construction leaves a possibility of danger or injury. It must create probability of such things. The mere fact that it is possible to use an article in such a way as to cause injury is not enough. It must be of such a character that it can not be used for the purposes for which it is intended without creating a direct certainty that its use will expose persons to the probability of injury."

The jury must have understood from these instructions and other language used by the District Judge in his charge that the damages must be not merely a possible but a probable result from the normal use of the defective article; that an injury is possible from the use of a defective article is not enough to charge a manufacturer with a duty independent of a contract; that it must appear that the manufacturer knew or had reasonable ground to believe that in the usual course of events it would be reasonably certain to cause injury to a user in the exercise of due care.

We now come to the other question: Was there any substantial evidence from which the jury was warranted in finding as a fact that the defendant was negligent in the construction of this particular urn, and the defect was such as to render it probable that a person using it in the way it was intended to be used would receive injuries due to the defect, and the plaintiff's injuries were the result of such negligence?

The issue here is not whether this court would have found that the plaintiff had failed to prove by a preponderance of the evidence that the defendant was negligent in the construction of this particular urn; but whether there was substantial evidence supporting the plaintiff's allegations that her injuries were due to negligence of the defendant that rendered the urn inherently dangerous, the weight of the evidence being a question of fact for the jury, and the plaintiff being entitled to have the evidence examined and weighed by the jury from the viewpoint most favorable to the plaintiff. Chicago, Milwaukee & St. Paul Ry. Co. v. Anderson (C. C. A.) 168 F. 901; Lowell v. Boston Storage Warehouse Co., 280 Mass. 234, 182 N. E. 341.

That the urn was manufactured and sold by the defendant to one Keebler in 1924 and was loaned by him to Mrs. Gessner in September, 1931, and was being used by the plaintiff at the time she was injured, is not in dispute; or that she was seriously injured and that the injuries occurred through the melting of the solder holding the base of the urn to a wire bead, so called, which solder alone supported the part of the urn containing the coffee, and also the melting of the solder holding the wire bead together, and resulting in the urn toppling over and spilling the hot contents of the urn in the plaintiff's lap.

There was also evidence from which the jury was warranted in finding that the urn had been used by Keebler prior to the accident to the plaintiff only four or five times, and that no accident resulted in any prior use may have been due to the conditions under which it was used; that it was in as good condition at the time of the accident as when delivered to Keebler in 1924; that no instructions were given when sold by the defendant to Keebler as to the manner of its use, and none were given by him to Mrs. Gessner, or by her to the plaintiff; that it was well known to the manufacturer of this particular urn that the flame of the spirit lamp furnished with it would in ordinary use vary in height; that a flame touching the bottom of the urn was not an improper use; that it was adjusted properly when Mrs. Gessner received it from Keebler; that Mrs. Gessner did not touch the wick of the lamp, nor was it changed in any way by the plaintiff; that in the construction of such urns by the defendant a flat piece of rolled metal or wire bead is first joined together with a solder of comparative high fusibility and is then soldered to the base of the urn with a solder of lower fusibility; that the wire bead rests on four legs and is soldered to them with a solder of still lower fusibility; that all that supported the container of the urn, which when filled with coffee weighed about seven and one half pounds, was solder estimated to be from one to two or three-thousandths of an inch in thickness and less than a half inch in width, by which the wire bead was joined to the base of the container of the urn.

No positive testimony, however, was offered by the defendant as to the exact fusing point of the solder used in constructing this particular urn. Apparently direct evidence as to the construction of any particular urn was not available in a factory making hundreds of such urns each year. The defendant offered evidence only of the custom or practice at its own and other factories in constructing urns of this design as to the fusing point of the solder used in joining the base of the container to the metal bead and the metal bead to the legs. The expert witnesses for the defendant representing other concerns making coffee urns, who testified as to the method of constructing such urns in the factory of the company by which they were employed, had no personal knowledge of the kind of solder used in the defendant's factory in manufacturing this type of urn, and, of course, could have no personal knowledge of the composition of the solder used in manufacturing this particular urn. The manager of the defendant's plant could not and did not undertake to say that some employee may not have used too little solder or solder of inferior grade in soldering the wire bead to the base of the container of this particular urn.

While no inference of negligence could properly be drawn by the jury simply because the accident occurred, as the urn had not been in the possession and control of the defendant for at least seven years, San Juan Light & Transit Co. v. Requena, 224 U. S. 89, 99, 32 S. Ct. 399, 56 L. Ed. 680, the jury was entitled, however, from the evidence offered by both sides, to make reasonable deductions as to the cause of the accident. Coleman v. Mechanics' Iron Foundry Co., 168 Mass. 254, 46 N. E. 1065.

The expert witnesses for both the plaintiff and the defendant all agreed that it was to be expected that flames of varying heights would be used even in a proper use of this urn, and the defendant's experts admitted that with a flame touching the bottom of the urn, or at a height of two or two and one half inches, they could not explain how the accident happened, unless there was a draft. All the evidence, however, excluded a draft in this case. One

of the defendant's experts, when asked, whether, if solder of low fusibility was used to join the base of the container to the wire bead, that would explain how the accident occurred under the circumstances described in the testimony, said his answer would be "Yes," although he indicated by his answer that he did not thereby admit the premises on which the answer was based.

The expert for the plaintiff expressed the opinion that the accident was due to a faulty design and construction of the urn in that there was no support for the urn except the thin film of solder by which its base was joined to the flat metal bead which alone rested on shoulders of the four legs; and that if this solder melted, the urn would drop down and topple over. This hazard would, of course, be increased if through negligence of the defendant's workmen too little solder, or solder of too low fusibility was used in joining the metal bead to the base of the urn.

We think there was substantial evidence from which the jury could have found that the plaintiff's injuries were due to the use in constructing this particular urn of solder of too low fusibility in joining the base of the urn to the metal bead; that the testimony of the experts corroborated the evidence of the plaintiff that the urn at the time the accident occurred was not being used in an improper manner and tended to exclude any other explanation of the accident except the negligence of the defendant in designing and constructing this particular urn, for which the defendant is liable, since it resulted in an article reasonably certain to expose a third person to injury even when using it in the manner it was intended to be used.

The judgment of the District Court is affirmed with costs to the plaintiff.