## BOSTON & M. R. R. v. BRESLIN. *

### No. 3071.

Circuit Court of Appeals, First Circuit.

Dec. 17, 1935.

*Certiorari denied 56 S. Ct. 590, 80 L. Ed. —.

BINGHAM, Circuit Judge, dissenting.

See, also, Muller v. Boston & M. R. R. (D.C.) 9 F.Supp. 802.

Carl C. Jones, of Concord, N. H. (Demond, Woodworth, Sulloway, Piper & Jones, of Concord, N. H., on the brief), for appellant.

Edward O. Proctor, of Boston, Mass. (William A. Cross and Withington, Cross, Proctor & Park, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM and MORTON, Circuit Judges, and BREWSTER, District Judge.

MORTON, Circuit Judge.

This was an action of tort for personal injuries. There was a verdict for the plaintiff, and the defendant has appealed. The injury occurred on the same turntable referred to in our opinion in Tashjian v. Boston & Maine R. R., 80 F.(2d) 320, handed down on November 27, 1935.

The plaintiff was about 8 years old. He was playing with other children on the defendant's turntable. They had no right to be there, and were trespassing on the defendant's property. The plaintiff and his companions removed what is called an H bar, weighing about 100 pounds, which was used to lock the turntable in position. They then proceeded to put the turntable in motion. The plaintiff got down into the shallow pit in which the turntable revolves in

order to assist in pushing it. While he was down there some one called out, "Here comes a man." The plaintiff thereupon tried to climb out of the pit and was caught by the revolving turntable and injured.

As stated in the other opinion, the turntable in question is located on the defendant's property adjacent to a public way in the thickly settled part of Stoneham, Mass.; it was visible from the street, and children frequently resorted to it and played with it; it was unquestionably a dangerous thing for children to play with, and was, or might be found to be, attractive to them. The defendant's employees were well aware of these facts. They knew that children frequently played with the turntable, and, according to the testimony, had made diligent efforts to prevent them from doing so. The defendant's witnesses testified that they had gone to parents of children found playing on the turntable, when they could learn who the parents were, and warned them of the danger; that they had made complaints about the trespassing children to the chief of police and to the authorities of the parochial school which the children attended, and had asked for co-operation in keeping the children off the railroad property; that they had put up "no trespassing" signs; that they had attempted to keep the turntable locked, but the padlocks used had been broken off almost as fast as they could be replaced; that as many as two or three locks in a week had been put on the turntable and broken off, and locks had sometimes been ordered a dozen at a time for this purpose; that the locks would be broken by the children and removed. The accident to the Tashjian boy occurred shortly before that in which the present plaintiff was hurt.

■ The first point urged by the defendant is that its motion to dismiss ought to have been granted; this involves a question of jurisdiction based on diversity of citizenship. The defendant is incorporated under the laws both of Massachusetts where the accident occurred and of New Hampshire where the case was tried. By the settled law of Massachusetts, children trespassing on turntables are not entitled to recover if they are injured. Daniels v. New York & N. E. R. Co., 154 Mass. 349, 28 N.E. 283, 13 L.R.A. 248, 26 Am.St.Rep. 253 (Sept. 3, 1891); Gay v. Essex St. Ry. Co., 159 Mass. 238, 34 N.E. 186, 21 L.R.A. 448, 38 Am.St. Rep. 415; Romana v. Boston Elevated R. Co., 218 Mass. 76, 105 N.E. 598, L.R.A. 1915A, 510, Ann.Cas. 1917A, 893; Adamo-

wicz v. Newburyport Gas Co., 238 Mass. 244, 130 N.E. 388. The "attractive nuisance" was definitely repudiated in the Daniels Case, supra, and that view has been consistently adhered to ever since. For this reason the plaintiff went into New Hampshire and brought suit there, alleging that he was a citizen of Massachusetts and the defendant a citizen of New Hampshire, and that there was jurisdiction in the federal court by reason of diversity of citizenship. The defendant contends that on such facts there was no jurisdiction. The precise question was decided by this court more than 30 years ago in favor of jurisdiction. Boston & Maine R. R. v. Hurd, 108 F. 116, 56 L.R.A. 193 (C.C.A. 1, 1901), certiorari denied 184 U.S. 700, 22 S.Ct. 939, 46 L.Ed. 765. That case has since been accepted as establishing the law of this circuit; and while the point is not free from doubt, the decision is by no means so clearly wrong as to require us to overrule it.

The next assignment of error to which we shall refer is that the District Judge erred in not granting the defendant's motion for a directed verdict. Three grounds were relied on in support of this motion: ■ That the defendant's liability should be decided according to the law of Massachusetts; (2) that there was no evidence that the defendant was negligent in respect to the maintenance of the turntable; (3) that the plaintiff's contributory negligence was established on his own testimony as a matter of law.

■ The "attractive nuisance" doctrine is recognized as law in the federal courts. Sioux City & P. R. Co. v. Stout, 17 Wall. 657, 21 L.Ed. 745; Best v. District of Columbia, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882. The defendant contends, however, that, in cases in which jurisdiction rests on diversity of citizenship, the federal courts in determining liability in tort for negligence will ordinarily follow the law of the state where the accident occurred if that law is well settled; and that there is no reason why "turntable cases" should stand on any different or exceptional footing. The plaintiff's position is, that "the question is one of general, not local law."

■ It is well settled that ordinarily in tort cases, in which the jurisdiction of the federal courts rests on diversity of citizenship, they will follow the law of the place where the tort was committed. Reed & Barton Corporation v. Maas (C.C.A.1) 73 F.(2d) 359, 361, citing cases; New York Central

R. Co. v. Chisholm, 268 U.S. 29, 45 S.Ct. 402, 69 L.Ed. 828, 38 A.L.R. 1048. We are not aware of any "general law" relating to liability in accident cases, as the plaintiff contends. The nearest approach to it in the federal courts is Baltimore & O. R. Co. v. Baugh, 149 U.S. 368, 13 S.Ct. 914, 37 L.Ed. 772, and similar cases, in which it was held that an interstate carrier's liability for accidents to its employees would be determined on general principles of common law rather than by the law of the state in which the accident occurred. Those cases rest on very different considerations from the one before us.

The plaintiff's position really is that, whatever the law may be as to other kinds of accidents, it is settled by decisions of the Supreme Court that in "turntable cases" the lex loci will be disregarded and the federal law which recognizes the "attractive nuisance" doctrine will be applied. Six decisions involving this question have been referred to. Sioux City & P. R. Co. v. Stout, 17 Wall. 657, 21 L.Ed. 745; Union Pacific R. Co. v. McDonald, 152 U.S. 262, 14 S.Ct. 619, 38 L.Ed. 434; United Zinc & Chemical Co. v. Britt, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615, 36 A.L.R. 28; Erie R. Co. v. Hilt, 247 U.S. 97, 38 S.Ct. 435, 62 L.Ed. 1003; New York, N. H. & H. R. Co. v. Fruchter, 260 U.S. 141, 43 S.Ct. 38, 67 L. Ed. 173; Best v. District of Columbia, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882. Of these the Britt, Hilt, and Fruchter Cases were decided in favor of the defendant. The Stout Case arose in Nebraska, about six years after that state was admitted into the Union, and at a time when there was no local law on the point in that case. The McDonald Case arose in Colorado. The local law is not referred to in the opinion. The plaintiff with his mother had just alighted from a train at the defendant's station. He took a path over the defendant's land which the defendant permitted the public to use. He strayed from the path to look at the defendant's mine and was burned by hot slack, the danger of which was not apparent. The court held that the defendant, permitting the public to go on its land, to use the path and to visit its mine, and knowing that they did so, was negligent in maintaining what amounted to a dangerous trap so near the path; and that under the circumstances the plaintiff was not to be regarded as a trespasser. There is nothing in the opinion indicating that such questions are of general, rather than of local, law. In the Hilt Case, a playing child,

trespassing on the railroad yard, was injured by the sudden movement of a train. A local statute which precluded recovery in such cases was held to be controlling. The opinion says: "The statute seemingly adopts in an unqualified form the policy of the common law as understood we believe in New Jersey, Massachusetts, and some other States, that while a landowner cannot intentionally injure or lay traps for a person coming upon his premises without license, he is not bound to provide for the trespasser's safety from other undisclosed dangers, or to interrupt his own otherwise lawful occupations to provide for the chance that some one may be unlawfully there." Holmes, J., 247 U.S. 97, at page 101, 38 S. Ct. 435, 436, 62 L.Ed. 1003. The Best Case arose in the District of Columbia, and of course no question of other than federal law was involved.

There is nothing in these decisions establishing any explicit rule of law governing "turntable" or "attractive nuisance" cases. They stand on the same footing as other accidents, and are controlled by the lex loci. It was so held in this circuit more than 30 years ago in McCabe v. American Woolen Co. (C.C.) 124 F. 283, affirmed (C.C.A.) 132 F. 1006, which also held that the Stout Case was not law in Massachusetts. We find nothing in the decisions which have since been made which requires us to overrule the McCabe Case.

The judgment appealed from must be reversed, and the case remanded to the District Court for further proceedings not inconsistent with this opinion.

The judgment of the District Court is vacated, the verdict is set aside, and the case is remanded to that court for further proceedings not inconsistent with the opinion; the appellant recovers costs of appeal.

BINGHAM, Circuit Judge (dissenting).

For a period of over 60 years (since 1874), the federal courts have recognized and enforced a rule of law which imposes upon the owner or person in control of land a duty to use due care to avoid injury to children of immature years who may be allured or tempted to enter upon the land by reason of a structure or condition there existing, which he had constructed or suffered to exist, and which he knows or has reason to anticipate will attract and injure children, provided the attractive appliance or condition can be seen by children from where they have a lawful right to be, or

the owner or person in control knows that children are in the habit of going to the place. This doctrine was first announced by the Supreme Court in Sioux City & P. R. Co. v. Stout (1874) 17 Wall. 657, 21 L. Ed. 745; and it is specifically stated in Best v. District of Columbia, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882, decided March 5, 1934, that the doctrine of that case has never been overruled by the Supreme Court. It is therefore certain that the principle announcement in the Stout Case is still the law of the federal courts.

It is true, as stated in the majority opinion, that the Britt Case, 258 U.S. 268, 42 S.Ct. 299, 66 L.Ed. 615, 36 A.L.R. 28, the Hilt Case, 247 U.S. 97, 38 S.Ct. 435, 62 L. Ed. 1003, and the Fruchter Case, 260 U.S. 141, 43 S.Ct. 38, 67 L.Ed. 173, were decided in favor of the defendants. But that does not militate against the rule or its existence, for those cases were held not to come within the rule. In the Britt Case it was so held (1) because it was doubtful whether the water or pool (the attractive condition or thing) could be seen from where the children lawfully were, and (2) because it did not appear that children were in the habit of going to the place. The Hilt Case did not come within the rule for the reason that a statute of New Jersey, the state where the action arose, expressly provided that any person walking or playing on a railroad right of way, except at a crossing, could not recover. And in the Fruchter Case, the rule was held not to apply because there was not sufficient evidence from which the jury could properly conclude that the railroad company had either directly or by implication invited or licensed the boy to climb to a point from which he could touch a bare electric wire 30 feet above the street, located on a cross-arm of a lattice tower some six or more feet above the topmost girder of a municipal bridge; all of which is clearly pointed out in the Best Case.

It is also stated in the majority opinion that the Stout Case "arose in Nebraska, about six years after that State was admitted into the Union, and at a time when there was no local law on the point in that case." There is nothing in the opinion in the Stout Case showing there was no local law on the point in that state in 1874, and nothing has been called to our attention showing that such was or was not the fact.

The McDonald Case, 152 U.S. 262, 14 S.Ct. 619, 38 L.Ed. 434, is sought to be distinguished on the ground that it arose in Colorado, and the "opinion does not refer to the local law." In the opinion in that case the doctrine of the Stout Case is expressly affirmed, and the opinion in both the McDonald and Stout Cases do not mention the "local law"; the decisions of the courts of the state where the actions arose. From the fact that the opinions in the Stout and McDonald Cases do not refer to the local law as promulgated by its courts it is not to be inferred that the Supreme Court would have followed the decisions of the courts of Colorado or Nebraska had there been any on the subject rather than it would have declared and enforced its own rule.

The opinion of Judge Putnam in the McCabe Case (C.C.) 124 F. 283, affirmed (C. C.A.) 132 F. 1006, and here relied upon in the majority opinion, in so far as it supports the conclusion there reached upon the decisions of the Massachusetts courts (Daniels v. New York & New England R. Co., 154 Mass. 349, 28 N.E. 283, 13 L.R.A. 248, 26 Am.St.Rep. 253) repudiating the Stout Case, does not meet my approval. The conclusion in that case, however, may be sustained on the ground that the action was based upon a statute of Massachusetts, under which statute, as construed by the Massachusetts court in Grant v. City of Fitchburg, 160 Mass. 16, 35 N.E. 84, 39 Am.St. Rep. 449, the plaintiff could not recover.

I am further of the opinion that the determination of the question whether an owner or one in control of land owes a duty to immature children under the circumstances announced in the Stout Case is one of general law and is to be enforced in the federal courts, even though the decisions of the courts of the state in which the action arose repudiate that principle and hold to the contrary, provided there is no statute of the state restricting such liability (as was the situation in the Britt Case), or no well-defined and established custom to the contrary. There is no such statute or local custom here shown to exist in Massachusetts, the state in which the action arose.

In Baltimore & O. R. Co. v. Baugh, 149 U.S. 368, 13 S.Ct. 914, 37 L.Ed. 772, it was held that a matter of general law should be settled by the independent judgment of the federal courts rather than through adherence to the decisions of a state court; and it also was held that the question, whether an engineer and fireman were fellow servants of the railway company or not, was a question of general law, and

numerous cases are cited in the opinion bearing upon the question of what is a question of general law. After recounting the various decisions, the court, 149 U.S. 368, on page 378, 13 S.Ct. 914, 918, 37 L.Ed. 772, said:

"But, passing beyond the matter of authorities, the question is essentially one of general law. It does not depend upon any statute; it does not spring from any local usage or custom; there is in it no rule of property, but it rests upon those considerations of right and justice which have been gathered into the great body of the rules and principles known as the 'common law.' There is no question as to the power of the states to legislate and change the rules of the common law in this respect as in others; but in the absence of such legislation the question is one determinable only by the general principles of that law. Further than that, it is a question in which the nation as a whole is interested. It enters into the commerce of the country."

In Boyce v. Tabb, 18 Wall. 546, 548, 21 L.Ed. 757, the court, in considering the contention that section 34 of the Judiciary Act of 1789 obliged the Supreme Court to follow the rule of decision in a state court, said:

"This is an erroneous view of the obligation imposed by that section on this court, as our decisions abundantly show. The provisions of that section do not apply, nor was it intended they should apply, to questions of a general nature not based on a local statute or usage, nor on any rule of law affecting titles to land, nor on any principle which had become a settled rule of property. The decisions of the State courts, on all questions not thus affected, are not conclusive authority, although they are entitled to, and will receive from us, attention and respect."

And in Presidio County v. Noel-Young Bond & Stock Co., 212 U.S. 58, 73, 29 S.Ct. 237, 242, 53 L.Ed. 402, the court said:

"Since the decision in Swift v. Tyson, 16 Pet. 1, 19, 10 L.Ed. 865, 871, it has been the accepted doctrine of this court that, in respect of the doctrines of *commercial law and general jurisprudence*, the courts of the United States will exercise their own independent judgment, and, in respect to such doctrines, will not be controlled by decisions based upon local statutes or local usage, although, if the question is balanced with doubt, the courts of the United States, for the sake of harmony, 'will lean to an agreement of views with the state courts.' " (Italics supplied.)

This case points out that where a court of the United States has under consideration the determination of a question of "commercial law," or "general jurisprudence," it will exercise its own independent judgment, and, while in doing so it would be controlled by a local statute, it would not be controlled by the decisions of local courts construing that statute, if it regarded such construction clearly wrong. But if the question of construction is "balanced with doubt, the courts of the United States, for the sake of harmony, will lean to an agreement with the state courts."

In Salem Trust Co. v. Finance Co., 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628, 31 A.L.R. 867, one of the questions under consideration was whether, in the absence of a local statute or usage, the second assignee of an ordinary chose in action (an account receivable), by first giving notice to the debtor, acquired a right prior and not subordinated to the right of the earlier assignee, and it was held that this was a question of general law in deciding which a federal court was not bound by the decisions of the highest courts of a state.

I also call attention to the opinion in Richardson v. Shaw, 209 U.S. 365, 28 S.Ct. 512, 52 L.Ed. 835, 14 Ann.Cas. 981. There the question was whether the relation between customer and broker was that of debtor and creditor, respectively, or that of pledgor and pledgee. It was well established, according to the decisions of the Massachusetts courts, that the relationship was that of debtor and creditor, and counsel for the petitioner took the position that the transaction, having taken place in Massachusetts, was governed by the lex loci. See 209 U.S. 365, at page 366, 28 S.Ct. 512, 52 L.Ed. 835, 14 Ann.Cas. 981. Counsel for the respondent, however, took the position that, "Although the transaction under consideration occurred in Massachusetts, the questions involved are to be determined not by the local law of Massachusetts, but on principles of *general jurisprudence*, there being no question as to the validity of the contracts between the bankrupt [the broker] and Shaw & Company [the customer] under the local law." See 209 U.S. 365, at page 368, 28 S.Ct. 512, 515, 52 L.Ed. 835, 14 Ann. Cas. 981. And the Supreme Court, in its decision of the case, exercised its independent judgment, and after pointing out what

the settled rule was in the courts of New York "where such transactions are the most numerous," the rule in Connecticut, and the views generally accepted as settled law by the text writers on the subject, said:

"The rule thus established by the courts of the state [New York] where such transactions are the most numerous, and which has long been adopted and generally followed as a settled rule of law, should not be lightly disturbed, and an examination of the cases and the principles upon which they rest leads us to the conclusion that in no just sense can the broker be held to be the owner of the shares of stock which he purchases and carries for his customer. While we recognize that the courts of Massachusetts have reached a different conclusion, and hold that the broker is the owner, carrying the shares upon a conditional contract of sale, and, while entertaining the greatest respect for the supreme judicial court of that state, we cannot accept its conclusion as to the relation of broker and customer under the circumstances developed in this case. We say this, recognizing the difficulties which can be pointed out in the application of either rule."

Then again, 209 U.S. 365, on page 380, 28 S.Ct. 512, 517, 52 L.Ed. 835, 14 Ann.Cas. 981:

" 'The fundamental difficulty grows out of the necessary attempt in some way to transform the customer, who enjoys all the incidents and assumes all the risks of ownership, into a person who in fact has no right, title, or interest, and to create out of the broker, who enjoys none of the incidents of ownership, and assumes not a particle of its responsibility, a person clothed with a full title and an absolute ownership.'

"We reach the conclusion, therefore, that, although the broker may not be strictly a pledgee, as understood at common law, he is essentially a pledgee, and not the owner of the stock, and turning it over upon demand to the customer does not create the relation of a preferred creditor, within the meaning of the bankrupt law."

In the Baugh Case, supra, it was held that the question whether an engineer was the superior of the fireman for whose negligence the railway company was responsible, or only a fellow servant, was a question of general law. If the fact that there the defendant was an interstate common carrier added anything to the generality of the legal question, it may be said that the defendant here is likewise an interstate common carrier and the point raised in the Stout Case, whether a legal duty is imposed upon an owner or occupant of land on which he maintains a structure attractive to immature children, is equally a question of general law; there being no local statute regulating the matter, and there can be no distinction as to the nature of the questions.

I am therefore of the opinion that this court is required to follow the rule announced by the Supreme Court, notwithstanding the decisions of the courts of Massachusetts, the state in which action arose, repudiate that rule.