## WILLIAMSON v. NORFOLK & W. RY. CO.

District Court, M. D. North Carolina.
Feb. 25, 1938.

Victor S. Bryant, of Durham, N. C., for plaintiff.

Guthrie & Guthrie, of Durham, N. C., for defendant.

HAYES, District Judge.

The complaint alleges that on November 18, 1936, the plaintiff's intestate, Joe H. Williamson, was twenty-two years of age; that about 9 o'clock p. m. he was walking from Main street to Holloway street along the right of way of the defendant; that he was on a trestle maintained by the defendant over and above Taylor street; that at this point the railroad tracks form a V; and that while he was walking along this trestle and approached the opening of the V that he stepped off of the trestle through an opening and fell into the street twenty-two feet below receiving injuries from which he died. It is further alleged that the defendant constructed this overhead pass above Taylor street in 1927 and has maintained it since that time without providing a light or a guardrail or any other device or warning for the protection of persons who pass that way. It is also alleged that numerous people have walked along there during this period of ten years, numbering thousands, and used the railroad right of way to such an extent as to wear the end of the crossties, and that the defendant knew that the people generally were using its track and trestle as a walkway; it is also alleged that it was a convenient way and one generally used by persons passing from Main street to Holloway street; and that these two streets were the principle streets in the city and at the place where this accident occurred was in a popular section of the city of Durham. It is also alleged that during the past ten years several people, in their original complaint six instances were named, had fallen and received injuries one of them being fatal, at this trestle, and that the defendant had knowledge both of the fact that people used the trestle as a walkway and that others had been injured before the plaintiff's intestate received his injury, and notwithstanding such knowledge the defendant failed to provide a light or to put up a warning or to furnish a guardrail or any other protection to safeguard persons from receiving injuries at this place. While the complaint alleges that the defendant invited people to pass that way and that it was guilty of maintaining a nuisance, nevertheless, a reading of the complaint discloses that both of these terms are mere conclusions of law which the pleader draws from the facts above stated.

The defendant has demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action and assigning still other grounds. But for the purposes of this decision we shall confine what we say to the question of whether the complaint in the light most favorable to the plaintiff does state a cause of action. It is elementary of course that for such a purpose we must assume that the plaintiff can establish all the facts which he has alleged or which bear reasonable relationship to the allegations, although we are not bound to accept conclusions alleged by the pleader. In determining the liability of the defendant for injuries to the plaintiff, we look at first to see what is the law in the State of North Carolina where the alleged tort was committed. It is to be observed that the accident came about upon the premises of the defendant and by reason of conditions that were permanently existing as distinguished from those where the accident follows some movement or act on the part of an individual. The question involves the liability of an owner of property for injuries inflicted upon persons who enter upon the owner's premises. The railroad company acquires its right to maintain its roadbed through the city of Durham for a quasi-public purpose. Assuredly the defendant should not

be penalized for constructing an overhead pass over the street in the city of Durham, for it has been contended on the part of many people throughout the country that railroad companies should construct either overhead or underpasses in order that people travelling along public streets and highways might have the opportunity of crossing a railroad without incurring the hazards incident to grade crossings. This has been a recognized policy in the interests of human life in the state of North Carolina for many years, and it is a matter of general knowledge that the cities and at times the state have contributed to the expense of the erection of such underpasses or overhead passes in the interest of the public. Where therefore the railroad has built a trestle over a street and where pedestrians have no legitimate business to use the trestle but elect to do so for their own private convenience, and where the railroad does nothing more than permit persons to walk across its trestle, does it assume the obligation of lighting the trestle or providing a guardrail or using other precautions to prevent persons from falling through the trestle?

I have been unable to locate any case that is precisely in point. Notwithstanding the extensive briefs which have been submitted by both parties on the question of this demurrer, we find no decision directly in point. It is to be observed that the conditions existing at the trestle at the time of the accident were the same which have prevailed there for ten years. This makes a distinction in fact between the facts existing in the case of Jones v. Railroad Co., 199 N.C. 1, 153 S.E. 637. That case held where the railroad track had been used for a long time by the permission of the defendant and the defendant placed loose dirt about the track without giving any warning of its changed condition, the defendant was answerable in damages caused thereby. The duty of an owner to protect his premises against licensees from falling into a well close to a public path over the premises was determined in the case of Monroe v. Railroad Co., 151 N.C. 374, 66 S.E. 315, 27 L.R.A.,N.S., 193. Thus it is held: "One who, with others, is accustomed to use, with the knowledge of the owner, a pathway across a vacant lot for his own convenience, without any enticement, allurement or inducement being held out to him by the owner, goes there at his own risk and enjoys the license subject to its concomitant perils; and while the owner may not place new and dangerous pitfalls and obstructions along the path without warning to those likely to use it, and escape liability for an injury thereby directly caused to one of them without fault on his own part, he owes no such duty when the pitfall or obstruction has remained there continuously for some time, in this case for a period of two years." See also Adams v. American Enka Corp., 202 N.C. 767, 164 S.E. 367.

In Boston & M. R. R. v. Breslin, 1 Cir., 80 F.2d 749, 103 A.L.R. 695, certiorari denied, 297 U.S. 715, 56 S.Ct. 590, 80 L.Ed. 1000, it is held that the federal courts in cases of torts will follow the law of the place where the tort was committed and citing in that decision the case of New York Central Railroad Company v. Chisholm, 268 U.S. 29, 45 S.Ct. 402, 69 L.Ed. 828, 38 A.L.R. 1048. The Breslin Case is not unlike the one here involved. There it was alleged that the defendant built a canal through the populous portion of the city; that many houses were located in the vicinity of the canal and that the children in these homes to the knowledge of the defendant habitually played on the banks of the canal; that the defendant with the knowledge of this custom of children to play there neglected to provide a guardrail or other device to prevent them from falling over the precipice into the canal; but it was held that the defendant was not liable under those circumstances.

This case I believe is distinguishable from Bennett v. Louisville & N. Railway Co., 102 U.S. 577, 26 L.Ed. 235, and Union Pacific Railway Co. v. McDonald, 152 U.S. 262, 14 S.Ct. 619, 38 L.Ed. 434. In the former case the railroad company built a gangway from its depot to the wharf for the convenience of its passengers going from the depot to the ship and by virtue of the nature of the land around the wharf it was well-nigh impossible for persons having occasion to go to the depot from the wharf or to the wharf from the depot without using the gangway provided by the defendant. The person who was injured was going from the depot to the wharf and fell through an opening receiving an injury, and it was there held that the defendant was liable because he was using the land for the very purpose for which the railroad company had appropriated it and that the defendant was

under the duty to exercise reasonable care to protect the public having occasion to pass over it. In the McDonald Case a boy fleeing from persons coming from the defendant's mine was running in the direction of his mother and ran into a slack pit that was burning but of which fact he was ignorant, and it was held there that the defendant was liable because it had knowledge that persons were passing that way and were liable to become injured. Speaking of the McDonald Case and Sioux City & P. Railroad Company v. Stout, 17 Wall. 657, 21 L.Ed. 745, in United Zinc Co. v. Britt, 258 U.S. 268, at page 274, 42 S.Ct. 299, 66 L.Ed. 615, 36 A.L.R. 28, the court says: "If the children [in those two cases] had been adults they would have had no case. They would have been trespassers and the owner of the land would have owed no duty to remove even hidden danger; it would have been entitled to assume that they would obey the law and not trespass. The liability for spring guns and mantraps arises from the fact that the defendant * * * expected the trespasser and prepared an injury." In the Britt Case, above, the court refused to permit a recovery where two boys were burned to death in a lake of poison water which the owner had permitted to stand on his premises without warning or without any protection.

■ Maintenance of a dangerous instrumentality upon one's land for ordinary and lawful purposes, and incident to its natural use in carrying on a lawful business, does not make one a wilful tort-feasor with respect to a trespasser who has come within its danger. 20 Ruling Case Law 63; Riedel v. West Jersey & S. Railroad Co., 3 Cir., 177 F. 374, 28 L.R.A.,N.S., 98, 21 Ann.Cas. 746.

■ The mere allegation that the deceased was invited to use the trestle as a walkway is not sufficient to constitute him an invitee. Facts sufficient to show the relationship of an invitee should be established, and not a mere allegation that he was such invitee. Nor does the allegation that the defendant was guilty of wilful and wanton negligence constitute such as a fact. It is necessary that facts be alleged which will show that the defendant was guilty of such wanton and will-ful negligence. The complaint in its final essence amounts to this: The defendant built a trestle over and above Taylor street ten years ago; it failed to provide any guardrail or erect lights or employ any other precautions to protect people who might see fit to use the trestle for their own convenience; certainly there is nothing in the complaint indicating that any of these pedestrians at any time went across the trestle in connection with any business of the defendant or in furtherance of any interest on its part; at most, they utilized the trestle for their private convenience and under all the authorities they were at most licensees to whom the defendant owed no duty except not to willfully or wantonly injure them. We are not dealing with a case where an engineer, seeing a pedestrian on the trestle in time to realize that he might not get off of it to avoid being hit by the train, carelessly runs the train on him and injures him. There is here no active negligence; if there is negligence at all, it consists in the failure of the defendant to put up a light, provide a guardrail, to use such other precautions as might be necessary to prevent pedestrians from falling over the trestle. If the defendant owed the duty to make the walkway a safeway for licensees to pass, then it would follow that it should not only provide a light and a guardrail, but it would be necessary for it to build additional space alongside of its trestle and perhaps fix a safe sidewalk for licensees in order that they might utilize the trestle without incurring the danger of injury. It seems to me that this is imposing an unreasonable burden upon the owners of property, and it is certainly a departure from any rule of law enunciated by the Supreme Court of North Carolina with respect to the liability of the ownership of property in this state. The mere fact that thousands of persons have used this trestle over a period of ten years, and that during that period six or more had received injuries there, ought not in my judgment to magnify the liability of the defendant and make it incumbent upon it to provide a safe walkway for these permissive users along and over the trestle.

For these reasons the demurrer is sustained and the action is dismissed.