**STEWART v. PATTON, Sheriff, et al.**

No. 57.

District Court, W. D. Tennessee, E. D.
April 23, 1940.

Joe C. Davis, of Lexington, Tenn., and Victor Woerner, of Jackson, Tenn., for plaintiff.

L. L. Fonville, W. N. Key, and Homer H. Waldrop, all of Jackson, Tenn., and W. R. Landrum, of Trenton, Tenn., for defendants.

MARTIN, District Judge.

The complaint in this civil action was filed on March 11, 1940, by a non-resident who qualified as administrator of a decedent who was a resident of Tennessee in this judicial district of the United States at the time of his death, against a sheriff of one of the counties of this district and the sureties on his official bond. The action seeks to recover $50,000 damages for the death of plaintiff's intestate through the alleged wrongful act of the defendant sheriff and his deputies in unlawfully and negligently imprisoning the decedent, Elbert Jowers, in a small steel cage in jail, while Jowers was under the influence of intoxicating liquor and was not in condition to be left alone with a companion who was also drunk in the same cell, which was almost hermetically sealed.

It appears from the complaint that during the night of their confinement, plaintiff's intestate and his companion were suffocated to death in their cell, in which a mattress caught fire, causing the cell to become "a furnace where the air was rapidly consumed, so that the said Jowers, after futile efforts to attract attention, was overcome with the gas and fumes and died."

The complaint charges that the defendant sheriff was guilty of "gross negligence in the manner in which he incarcerated the said Jowers and kept him in the jail; by placing him in a portion of the jail apart from the other prisoners; by placing him in a cell that was almost hermetically sealed; by not searching the said Jowers and his companion to see if they had matches or other things which might be injurious to them in their drunken condition, and by failing to have proper inspection from time to time of the quarters in which Jowers and his companion were confined in order to see that they were not injuring themselves or in need of attention, with the result that they were suffocated as above set forth."

The defendants filed, on April 3, 1940, their joint and several answer in which twenty defenses were set up, of which the last two go to the jurisdiction of this court. The case was promptly set for trial; and, in the course of the trial to a jury on April 22, 1940, the Court, after hearing the testimony of the administrator, ruled that the full proof of the plaintiff in support of his position that this court has jurisdiction of the controversy should be first adduced, before any evidence is received upon the merits of the case. In addition to the administrator, Walter Stewart, a resident of Blytheville, Arkansas, the plaintiff introduced as witnesses, W. T. Jowers, father of the decedent, Elbert Jowers, Judge August Wilde, Judge of the County Court of Madison County, Tennessee, and Mrs. Opal Jowers, widow of the decedent. A certified copy of the record of the pro-

ceedings of the County Court of Madison County, in which Walter Stewart was appointed administrator of the estate of Elbert Jowers, deceased, was introduced and received in evidence. The order appointing the administrator recited that the cause was heard upon the sworn petition of W. T. Jowers; that it appeared to the court that Elbert Jowers, about 29 years of age, died intestate in Madison County, Tennessee, on or about November 23, 1939; "and that he was a resident of said county and state on the date of his death, and that he left no estate except that which is exempt to his widow and children, and a claim for his wrongful death; that he left a widow, Opal Jowers, about 25 years of age, and two children, Marie Jowers, about nine years of age, and Bobby Jowers, about seven years of age, surviving him as his only heirs and distributees; that the surviving widow of the said Elbert Jowers, and the petitioner, W. T. Jowers, who is the father of the said Elbert Jowers, deceased, desire that Walter Stewart, who resides in or near the town of Blytheville, Arkansas, be appointed administrator of the estate of the said Elbert Jowers, and that the said Walter Stewart is willing and desires to act as such administrator."

Upon the conclusion of the hearing of the evidence introduced by the plaintiff on the question of jurisdiction, the defendants obtained leave to amend their answer by averring that "the court is without jurisdiction in this cause for the reason that the administrator in whose name the suit was brought was collusively made such for the sole purpose of conferring jurisdiction upon the court", and that such action was a "subterfuge" to oust the state court of its lawful jurisdiction, and that the real parties in interest are all residents of Madison County, Tennessee. ·

The non-resident administrator, who lives in Mississippi County, Arkansas, testified that he is not related to any of the Jowers family; that many years ago he had lived in Lexington, Tennessee, where he was acquainted with W. T. Jowers, father of the deceased; that he came over to Tennessee in response to a message from Mr. Joe Davis, one of the attorneys for the plaintiff in this cause, and qualified as administrator under the direction of the attorney; that the attorneys were already in the case when he "went into it"; that he left to the lawyers the entire handling of the administration of the estate; that he

performed what he was called upon to do, which was to authorize the filing of the suit in his name, as administrator; that there are no assets of the estate; that he has done. nothing toward paying funeral expenses of the intestate; that he knows nothing concerning the death of his intestate, except from hearsay; and that he has made no personal effort toward preparation for the trial, leaving the matter entirely to the lawyers in the case.

The attorneys for plaintiff frankly admit that the sole purpose of securing Mr. Walter Stewart, a non-resident of Tennessee, to qualify as administrator of the estate of decedent was to enable this action to be brought in this federal trial court on the basis of the jurisdiction resting on diversity of citizenship.

■ It has been long established law that if a suitor presents a justifiable demand and the requisite diversity of citizenship exists, the motive for invoking the jurisdiction of the federal court is immaterial. Blair v. Chicago, 201 U.S. 400, 26 S.Ct. 427, 50 L.Ed. 801; Chicago v. Mills, 204 U.S. 321, 27 S.Ct. 286, 51 L.Ed. 504; Wheeler v. Denver, 229 U.S. 342, 33 S.Ct. 842, 57 L.Ed. 1219; Black & White Taxicab, etc., Co. v. Brown & Yellow Taxicab, etc., Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed. 681, 57 A.L.R. 426; Sias v. Johnson, 6 Cir., 1936, 86 F.2d 766; Boston & Maine R. R. v. Breslin, 1 Cir., 1935, 80 F.2d 749, 103 A.L.R. 695.

In Harrison v. Love, 6 Cir., 1936, 81 F.2d 115, it was contended that the appointment in Michigan of a subject of Great Britain as administrator to bring suit in the United States District Court for the Western District of Michigan against a resident of Michigan, to recover damages for the death of an Ohio resident (whose widow, appointed administratrix in Ohio, could not sue in Michigan) was collusive. In answering this contention, the Court of Appeals said (81 F.2d at page 117): "As to the question of collusion, the District Court rightly overruled the motion. Appellee was regularly appointed administrator of the estate in Michigan. The motive that actuated these parties in procuring a lawful and valid appointment is immaterial upon the question of identity or diversity of citizenship. Mecom, Adm'r v. Fitzsimmons Drilling Co., Inc., 284 U.S. 183, 189, 52 S.Ct. 84, 76 L.Ed. 233 [77 A.L.R. 904]. See, also, City of Detroit v. Blanchfield [6 Cir.], 13 F.2d 13, 47 A.L.R. 314."

Compare Chambers v. Anderson, 6 Cir., 1932, 58 F.2d 151, where it was held in an action against the sheriff and his sureties on his official bond to recover damages for the killing of the husband of administratrix, that a lack of diversity of citizenship did not appear on the face of the declaration showing that a non-resident was appointed administratrix by the Probate Court of the State in which the suit was brought.

In Doyle v. Loring, 6 Cir., Nov. 10, 1939, 107 F.2d 337 (affirming the judgment of this district court; certiorari denied by Supreme Court, 60 S.Ct. 808, 84 L.Ed. ——), it was held that where a defendant is sued individually and as administratrix, defendant's citizenship as administratrix was identical with that of her personal citizenship for jurisdictional purposes on the question of diversity of citizenship. See, also, Boston & Maine R. R. v. Dutille, 1 Cir., 289 F. 320; Smith v. Burt, D.C., 46 F.2d 236; Monmouth Inv. Co. v. Means, 8 Cir., 151 F. 159; Cincinnati, etc., Co. v. Thiebaud, 6 Cir., 114 F. 918; Continental Life Ins. Co. v. Rhoads, 119 U.S. 237, 7 S.Ct. 193, 30 L.Ed. 380.

Memphis St. Ry. Co. v. Bobo, 6 Cir., 232 F. 708, is authority for the proposition that the jurisdiction of the federal courts upon diversity of citizenship depends upon the personal citizenship of the parties of record, and not upon the citizenship of the parties whom they represent.

Southern Realty Inv. Co. v. Walker, 211 U.S. 603, 29 S.Ct. 211, 53 L.Ed. 346, is not in point, because of the total lack of similarity between its facts and the record revealed in the case at bar. The collusive creation of a corporation in the manner employed by attorneys in the Walker case is wholly different from the use by the attorneys in the instant case of a non-resident as administrator for diversity of citizenship jurisdictional purposes.

The decision of District Judge Clarke in Cerri v. Akron-People's Telephone Co., D.C., 219 F. 285, cited by defendants' counsel, is in point, but is out of line with the decision of the Supreme Court of the United States in Mecom, Adm'r v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 85, 76 L.Ed. 233, 77 A.L.R. 904. This last cited opinion of the highest authority seems determinative against the position of the defendants on the question of jurisdiction, because the Mecom case distinctly holds that federal courts have jurisdiction of suits by and against executors and administrators, if their citizenship be diverse from that of the opposing party, although their testators or intestates might not have been entitled to sue or been liable to suit in those courts for want of diversity of citizenship. The extent to which this doctrine has been carried clearly covers the instant case, for it appears from the Supreme Court's opinion that "the motive for the appointment [of the administrator] was to obviate the diverse citizenship of the parties which had justified the removal of the earlier suits, and that petitioner had, as a favor to the widow and her attorney, agreed to act as administrator". The Supreme Court said: "But it is clear that the motive or purpose that actuated any or all of these parties in procuring a lawful and valid appointment is immaterial upon the question of identity or diversity of citizenship. To go behind the decree of the probate court would be collaterally to attack it, not for lack of jurisdiction of the subject-matter or absence of jurisdictional facts, but to inquire into purposes and motives of the parties before that court when, confessedly, they practiced no fraud upon it. The case falls clearly within the authorities announcing the principle that in a removal proceeding the motive of a plaintiff in joining defendants is immaterial, provided there is in good faith a cause of action against those joined. * * * The case comes to no more than this: There being, under Oklahoma law, a right to have a nonresident appointed administrator, the parties in interest lawfully applied to an Oklahoma court, and petitioner was appointed administrator, with the result that the cause of action for the wrongful death of the decedent vested in him. His citizenship being the same as that of one of the defendants there was no right of removal to the federal court; and it is immaterial that the motive for obtaining his appointment and qualification was that he might thus be clothed with a right to institute an action which could not be so removed on the ground of diversity of citizenship."

The purpose in the instant case to qualify a non-resident as administrator to bring suit in the federal court on the jurisdictional ground of diversity of citizenship is no more obvious than was the action of having an administrator appointed in the Mecom case, whose citizenship was the same as that of one of the defendants, for the express purpose of preventing removal to the federal court.

678

■ Therefore, applying the foregoing principles, especially as declared in the Mecom case, it clearly follows that here the non-resident administrator has a right to maintain this action against residents of this judicial district upon allegations of a justifiable cause of action involving the requisite jurisdictional amount.

Accordingly, the 21st defense, challenging jurisdiction of this court, is denied.